# IN THE SUPREME COURT OF IOWA

No. 13–0543

Filed March 13, 2015

**ERIC WAYNE DEMPSEY,**

　　Appellant,

vs.

**STATE OF IOWA,**

　　Appellee.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Paul L. Macek, Judge.

Defendant appeals the denial of his petition for postconviction relief, claiming ineffective assistance of counsel during the plea-bargaining process under the Sixth Amendment to the United States Constitution. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Courtney T. Wilson of Gomez May L.L.P., Davenport, for appellant.

Thomas J. Miller, Attorney General, Kyle P. Hanson, Assistant Attorney General, Michael J. Walton, County Attorney, and Julie A. Walton, Assistant County Attorney, for appellee.

**ZAGER, Justice.**

Eric Dempsey appeals the denial of his petition for postconviction relief. He maintains he received ineffective assistance of counsel as a result of counsel's failure to accurately inform him of the terms and potential sentencing outcomes of a first plea offer proposed by the State. He asserts that because counsel misinformed him of the terms of the first plea offer, he did not accept it. Thereafter, the State withdrew its first plea offer and made a second, less favorable plea offer, which Dempsey accepted. Upon our de novo review, we conclude that while counsel may have failed to perform an essential duty when he did not accurately inform Dempsey of the exact terms and sentencing outcomes of the first plea offer, Dempsey has not established the necessary prejudice to succeed on his ineffective-assistance-of-counsel claim. Specifically, he has failed to show he would have accepted the first, more favorable plea offer had counsel accurately informed him of its exact terms and potential sentencing outcomes. We vacate the decision of the court of appeals and affirm the judgment of the district court.

## I. Background Facts and Proceedings.

On April 24, 2008, at approximately 4:55 a.m., officers were dispatched to L.F.'s residence in Davenport, Iowa. This was in response to a report that Dempsey had broken into L.F.'s residence, assaulted her, and then exited through the back door. At the same time, several other officers were dispatched to the home of Dempsey's mother, where Dempsey was then residing.

Upon arrival at L.F.'s residence, officers made contact with L.F., who was scared and upset. She told officers she had been awakened to find Dempsey on top of her. L.F. began kicking and screaming in an effort to get Dempsey off her. Dempsey allegedly covered her mouth with

his hand and asked, "Do you want your kids to live?" L.F.'s four-year-old son was in the bed next to her at the time. L.F. reported Dempsey was wearing a gray hooded sweatshirt. L.F. also reported she had a scratch on her right upper thigh, which was not there before she went to bed.

K.R., who had been sleeping on the couch in another room, heard L.F. scream and ran to her aid. K.R. yelled, "What the f*** are you doing?" Dempsey responded, "You b****** are crazy," and ran downstairs and exited the residence. K.R. told officers she knew it was Dempsey because he is her son's uncle. Dempsey did not have permission to enter the residence. A screwdriver was located in L.F.'s bed.

At the Dempsey residence, officers positioned themselves around the residence and were about to make contact at the front glass storm door when Dempsey appeared there. The officers ordered Dempsey out of the residence, handcuffed him, and took him into custody. Thereafter, officers made contact with Dempsey's mother, who consented to a search of the residence. Officers then searched Dempsey's bedroom, where they found a gray hooded sweatshirt.

Based on the above events, law enforcement filed an initial complaint charging Dempsey with the following offenses: (1) burglary in the second degree in violation of Iowa Code section 713.5 (2007), a class "C" felony; (2) assault with intent to commit sexual abuse causing bodily injury in violation of Iowa Code section 709.11, a class "D" felony; and (3) possession of burglar's tools in violation of Iowa Code section 713.7, an aggravated misdemeanor. Counsel was appointed to represent Dempsey on the charges. On April 28, Dempsey entered pleas of not guilty to each of the charges.

Also on April 28, counsel sent Dempsey a detailed letter informing him of the charges and advising him of the elements the State would

need to prove to obtain a conviction. The letter also advised Dempsey of the potential consequences of each of the charges. As to the charge of second-degree burglary, the letter explained the offense was a class "C" felony with a maximum sentence of ten years in prison. The letter further explained that if Dempsey "intentionally or recklessly inflicted a bodily injury, however slight, the charge could be upgraded to first-degree burglary, for which the . . . maximum penalty [was] [twenty-five] years in state prison."

As to the charge of assault with intent to commit sexual abuse causing bodily injury, the letter included a portion of Iowa Code section 709.11, which in relevant part provides:

> Any person who commits an assault . . . with the intent to commit sexual abuse is . . . guilty of a class "D" felony if the person thereby causes any person a bodily injury other than a serious injury[,] . . . [and] is guilty of an aggravated misdemeanor if no injury results.

The letter further explained that the maximum sentence for this offense was five years in prison.

As to the charge of possession of burglar's tools, the letter explained that the offense was an aggravated misdemeanor with a maximum sentence of two years in prison. Finally, the letter noted that if Dempsey was convicted on all three charges in the initial complaint, and if the district court ordered the sentences to run consecutively, Dempsey would face "maximum sentences totaling [seventeen] years in prison." The letter further warned that if the State increased the charge from second-degree burglary to first-degree burglary, Dempsey would face maximum sentences totaling thirty-two years in prison.

On May 28, the State filed its trial information. The trial information charged Dempsey with the following offenses: Count I,

burglary in the second degree in violation of Iowa Code section 713.5, a class "C" felony; Count II, possession of burglar's tools in violation of Iowa Code section 713.7, an aggravated misdemeanor; and Count III, assault with intent to commit sexual abuse not resulting in injury in violation of Iowa Code section 709.11, an aggravated misdemeanor. Thus, the State charged Dempsey with the same offenses as in the complaint, except the count of assault with intent to commit sexual abuse causing bodily injury, the original class "D" felony, was charged as assault with intent to commit sexual abuse *not* resulting in injury, an aggravated misdemeanor. Also attached to the trial information was a printout of Dempsey's criminal history, which showed a 2003 conviction for sexual abuse in the third degree, a class "C" felony. *See* Iowa Code § 709.4. Dempsey had been sentenced to ten years in prison for that conviction.

On June 26, counsel sent Dempsey a second letter. A copy of the trial information was attached to this letter. The letter informed Dempsey that a pretrial conference had been scheduled for June 27. The letter further stated, "The State has charged you with the same offenses as in the complaint." This was inaccurate. The letter further reiterated that if Dempsey lost at trial, he could face maximum sentences totaling seventeen years in prison.

On June 27, the State filed a memorandum of plea agreement, the first plea offer. Pursuant to the terms of the first plea offer, Dempsey would plead guilty to Count II, possession of burglar's tools, an aggravated misdemeanor, and Count III, assault with intent to commit sexual abuse not resulting in injury, also an aggravated misdemeanor, as charged in the trial information. The State would dismiss Count I,

second-degree burglary, a class "C" felony. The State would recommend incarceration.

On June 29, counsel sent Dempsey a third letter informing him of the first plea offer. A copy of the first plea offer was attached to the letter. The letter explained the terms of the plea offer and stated that if Dempsey accepted the plea offer, and if the district court ordered the sentences to run concurrently, he would face maximum sentences of five years in prison. The letter further stated, "Although there are no guarantees, the Court often gives concurrent sentences when people plead guilty instead of going to trial." In addition to explaining the terms of the offer, the letter stated,

> Although you have expressed confidence in my ability to defend you, I must be blunt that you are almost certain to lose at trial. If [L.F.] and [K.R.] maintain roughly the same story they told the police, any jury is going to convict you.

The letter reiterated that if Dempsey lost at trial he could face sentences totaling seventeen years in prison.

The letter also stated, "I don't think [the State] realizes yet that [it] could upgrade the burglary charge [to first-degree burglary]. . . . If [the State] realizes this before trial, you would face sentences totaling [thirty-two] years in prison." The letter then warned,

> [The State] is not going to make a better offer. In fact, if [it] starts preparing for trial and realizes [it] could upgrade the burglary charge, [it] could very well withdraw this offer. If you decide you want to take the deal, you should let me know right away.

Finally, the letter noted that because Dempsey would be pleading guilty to assault with intent to commit sexual abuse, he would "have to register on the sex offender registry." However, the letter additionally noted that

Dempsey was already required to register due to his prior conviction for third-degree sexual abuse.

On July 10, counsel conferred with Dempsey at the Scott County jail to discuss the first plea offer, possible depositions, and the evidence in the case. When Dempsey did not accept the first plea offer, counsel filed a motion to authorize depositions, which the district court granted. Thereafter, counsel scheduled depositions for July 24 and subpoenaed several witnesses to appear for depositions, including L.F. and K.R. The record does not indicate any further discussions occurred between counsel and Dempsey relating to the first plea offer.

On the day of the scheduled depositions, both L.F. and K.R. appeared for their depositions. Prior to the commencement of the depositions, the State withdrew the first plea offer and submitted a second, less favorable plea offer. Pursuant to the terms of the second plea offer, Dempsey would plead guilty to Count I, second-degree burglary, a class "C" felony, and Count III, assault with intent to commit sexual abuse not resulting in injury, an aggravated misdemeanor, as charged in the trial information. The State agreed to dismiss Count II, possession of burglar's tools, also an aggravated misdemeanor. The second plea offer further noted, "The defendant . . . will be sentenced pursuant to Iowa Code section [901A.2(1)] as an enhanced sentence of four years due to [a] prior conviction for a sexually predatory offense."[1] The State would recommend incarceration and consecutive sentences.

---

[1]Iowa Code section 901A.2(1) provides:

A person convicted of a sexually predatory offense which is a serious or aggravated misdemeanor, who has a prior conviction for a sexually predatory offense, shall be sentenced to and shall serve twice the maximum period of incarceration for the offense, . . . prior to being eligible for parole or work release. However, a person sentenced under this subsection shall not have the person's sentence reduced . . . by more than fifteen percent.

When the State made the second plea offer, it informed Dempsey that if he proceeded with the scheduled depositions, it would amend the trial information to increase the charge in Count I to burglary in the first degree in violation of Iowa Code section 713.3, a class "B" felony. If convicted, Dempsey would face a maximum sentence of twenty-five years in prison. *See id.* § 902.9(2). The State also informed Dempsey it would increase the charge in Count III to assault with intent to commit sexual abuse *causing* bodily injury, the class "D" felony. *See id.* § 709.11. If convicted, Dempsey would face a maximum sentence of twenty-five years in prison and a mandatory minimum of eighty-five percent (twenty-one and one-quarter years), due to his prior conviction for third-degree sexual abuse. *See id.* § 901A.2(3);[2] *id.* § 902.9(5). Additionally, the State threatened to charge Dempsey with sexual abuse in the second degree in violation of Iowa Code section 709.3, a class "B" felony. If convicted, Dempsey would face a maximum sentence of fifty years in prison and a mandatory minimum of eighty-five percent (forty-two and one-half years), due to his prior conviction for third-degree sexual abuse. *See id.* § 901A.2(3); *id.* § 902.9(2). Coupled with the two-year sentence for a conviction of possession of burglar's tools, Dempsey would face possible consecutive sentences totaling seventy-seven years in prison with a mandatory minimum of forty-two and one-half years. In light of this potentially harsh result, Dempsey abandoned depositions and accepted the second plea offer.

---

[2]Iowa Code section 901A.2(3) in relevant part provides:

[A] person convicted of a sexually predatory offense which is a felony, who has a prior conviction for a sexually predatory offense, shall be sentenced to and shall serve twice the maximum period of incarceration for the offense, or twenty-five years, whichever is greater . . . . A person sentenced under this subsection shall not have the person's sentence reduced . . . by more than fifteen percent.

That same day, counsel sent Dempsey a fourth letter informing him a plea hearing had been scheduled for July 30, at which time Dempsey would plead guilty pursuant to the terms of the second plea offer. The plea hearing was held as scheduled on July 30. At the hearing, Dempsey entered guilty pleas pursuant to the terms of the second plea offer. The district court deferred acceptance or rejection of the pleas until it received a presentence investigation report.

The sentencing hearing was held on September 4. On Count I, the conviction of second-degree burglary, the district court sentenced Dempsey to an indeterminate term of imprisonment not to exceed ten years. On Count III, the conviction of assault with intent to commit sexual abuse not resulting in injury, the district court sentenced Dempsey to an indeterminate term of imprisonment not to exceed four years pursuant to Iowa Code section 901A.2(1). The district court ordered the terms to run consecutively, ultimately resulting in the imposition of an indeterminate term of imprisonment not to exceed fourteen years.

In November 2010, Dempsey filed his petition for postconviction relief asserting five independent claims of ineffective assistance of counsel. The petition does not claim counsel was ineffective for failing to accurately inform him of the exact terms and potential sentencing outcomes of the first plea offer. After counsel was appointed, an amended petition was filed in May 2011. The amended petition does not claim counsel was ineffective for failing to accurately inform him of the exact terms and potential sentencing outcomes of the first plea offer. In April 2012, Dempsey's counsel withdrew from the case, and a second attorney was appointed to represent Dempsey. The postconviction hearing was held on December 21, 2012. At the hearing, Dempsey

asserted for the first time the additional ground of ineffective assistance of counsel, namely that counsel failed to accurately inform him of the exact terms and potential sentencing outcomes of the first plea offer, causing him to forgo accepting the first plea offer to his detriment.[3]

---

[3]In his original postconviction relief petition, Dempsey asserted counsel was ineffective for failing to inform him of the sentencing enhancement applicable due to his prior conviction for third-degree sexual abuse. Specifically, he claims, "I was never properly informed of [the] sentencing guidelines for assault w[ith] intent or the enhanced charge."

On March 16, 2011, the State filed a motion for summary judgment asserting, among other things, that this claim was identical to an issue previously addressed by the court of appeals in 2009. *See State v. Dempsey*, No. 08–1611, 2009 WL 2170229, at *1–2 (Iowa Ct. App. July 22, 2009). In that appeal, Dempsey maintained counsel had been ineffective in failing to object to the district court's failure to inform him both of the 901A.2(1) enhancement, and that the enhancement was mandatory in nature pursuant to section 901A.2(7). *Id.* The court of appeals rejected Dempsey's claims. *Id.* at *2. It reasoned that counsel had not been ineffective because the district court informed Dempsey both of the 901A.2(1) enhancement and of its mandatory nature, and further gave Dempsey the opportunity to consult privately with counsel before entering the plea after Dempsey indicated he was unaware of these consequences. *Id.* Consequently, the State requested that the district court preclude Dempsey from "relitigating the grounds listed in his application for postconviction relief because they were raised and finally adjudicated on direct appeal."

The district court granted the State's motion for summary judgment on Dempsey's claim regarding counsel's failure to inform him of the 901A.2(1) enhancement, which barred Dempsey from relitigating that issue. Nevertheless, at the postconviction hearing Dempsey testified that counsel "never informed [him] . . . [he] was in danger of having [his] charges enhanced due to [his] prior conviction." He further testified that counsel's failure to inform him "that [his] charges could be enhanced due to [his] prior conviction, [or] that there was a chance of an [eighty-five] percent on [his] sentence" affected his decision of whether to accept the first plea offer. Despite Dempsey's testimony, the district court did not address this claim in its ruling on Dempsey's postconviction relief petition. It only addressed the issue of whether "counsel had *misinformed* [Dempsey] in respect to a prior plea agreement." (Emphasis added.). Dempsey did not file a motion requesting that the district court address this issue, as required by our error preservation rules. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) (" 'When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal.' " (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002))). Neither has Dempsey appealed the district court's ruling on the State's motion for summary judgment. Further, Dempsey has not raised this issue in his appellate brief. *State v. Ochoa*, 792 N.W.2d 260, 292 (Iowa 2010) ("Because the issue . . . is not raised in its appellate brief and is not inextricably intertwined with any other issues properly before us, we ordinarily would deem the issue waived."). Consequently, this issue is not properly before us and we do not decide it.

At the postconviction hearing, Dempsey testified that from the time of his arraignment to the time he accepted the second plea offer, he had regular communications with counsel. During this time, Dempsey estimated counsel sent him ten letters and came to see him three or four times at the jail. Dempsey testified that during these interactions, counsel repeatedly told him he was charged with "a felony assault with intent causing injury, when [he was actually] charged . . . with a misdemeanor no injury." Dempsey further testified that he failed to accept the first plea offer because he "was misled . . . to believe . . . that the plea agreement was for a felony," when it was actually for an aggravated misdemeanor.

On cross-examination, the State asked Dempsey if on the day of the depositions it had informed him that if he pursued depositions, it would withdraw the first offer and he would face enhanced charges. Dempsey confirmed that the State had informed him of this fact. The State then asked, "[S]o you chose not to take that huge risk . . . and decided to accept the plea for which you are currently serving your sentence?" Dempsey responded, "Yes." When asked if counsel had informed him a month prior to the deposition date that there was a risk the State could increase his charges to first-degree burglary, Dempsey responded, "I do agree with you on that." When asked if counsel had urged him to accept the first plea offer based on that risk, Dempsey responded,

> That was [counsel's] opinion, yes, that it could be upgraded to First Degree Burglary if [the State] found out about [the alleged scratch]. But [the State] was already informed of it in the Trial Information. It clearly says that there was an alleged scratch.

Counsel was unable to testify at the postconviction hearing. However, his deposition testimony was later added to the record. At his deposition, counsel testified that "Dempsey indicated at the beginning of the case that he wanted to take this to trial" because "earl[y] on there was some question as to whether . . . the witnesses would actually show up" given that Dempsey, L.F., and K.R. "all knew each other." Counsel also testified that, on the day of depositions,

> [The State] had a discussion with [him] indicat[ing] . . . the case [was] more serious than what the first plea offer contemplated. And, . . . [it] was willing to offer [Dempsey] an amended plea agreement as long as [he accepted] it right then. But if [Dempsey] put the victim through the emotional turmoil of a deposition, [the State] would no longer be amenable to a plea agreement and [Dempsey] would be going to tr[ial] facing those [increased] charges.

The district court denied Dempsey's petition for postconviction relief on all grounds. As to the first plea offer, the district court concluded counsel had failed to accurately inform Dempsey of its terms. However, the district court concluded that even if Dempsey had accepted the first plea offer, there was not a reasonable probability the plea-taking court would have accepted the pleas under the terms of the first plea offer, given the nature of the offenses and Dempsey's criminal history. Dempsey appealed, and we transferred the case to the court of appeals. The court of appeals affirmed the district court's ruling. Like the district court, it also reasoned that Dempsey had failed to show the plea-taking court would have accepted the pleas under the terms of the first plea offer. Thus, the court of appeals agreed with the district court that Dempsey had failed to demonstrate the necessary prejudice to establish ineffective assistance of counsel.

Dempsey applied for further review, which we granted.

**II.  Standard of Review.**

We review ineffective-assistance-of-counsel claims de novo.  *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).  This is because such claims are grounded in the Sixth Amendment to the United States Constitution. *Id.*

**III.  Discussion.**

A defendant is entitled to the effective assistance of counsel in the plea-bargaining process.  *Missouri v. Frye*, 566 U.S. ___, ___, 132 S. Ct. 1399, 1407–08, 182 L. Ed. 2d 379, 390 (2012) ("[C]riminal defendants require effective counsel during plea negotiations."); *Lafler v. Cooper*, 566 U.S. ___, ___, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398, 406 (2012) ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."); *see also Padilla v. Kentucky*, 559 U.S. 356, 373, 130 S. Ct. 1473, 1486, 176 L. Ed. 2d 284, 298 (2010); *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203, 210 (1985).  To succeed on a claim of ineffective assistance of counsel in this context, a claimant must satisfy the familiar two-pronged standard by establishing by a preponderance of the evidence: " '(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice.' "  *State v. Adams*, 810 N.W.2d 365, 372 (Iowa 2012) (quoting *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006)); *accord Lafler*, 566 U.S. at ___, 132 S. Ct. at 1384, 182 L. Ed. 2d at 406; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984).  Reversal is warranted only where a claimant makes a showing of both elements.  *Simmons v. State Pub. Defender*, 791 N.W.2d 69, 75–76 (Iowa 2010).  If we conclude a claimant has failed to establish either of these elements, we need not address the remaining element.  *See Clay*, 824 N.W.2d at 501 n.2 ("The court always

has the option to decide the claim on the prejudice prong of the *Strickland* test, without deciding whether the attorney performed deficiently.").

Under the first prong, " 'we measure counsel's performance against the standard of a reasonably competent practitioner.' " *Id.* at 495 (quoting *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008)). It is presumed the attorney performed his or her duties competently, and a claimant must successfully rebut this presumption by establishing by a preponderance of the evidence counsel failed to perform an essential duty. *Id.* We assess counsel's performance "objectively by determining whether [it] was reasonable, under prevailing professional norms, considering all the circumstances." *State v. Lyman*, 776 N.W.2d 865, 878 (Iowa 2010).

Under the second prong, a claimant must establish that prejudice resulted from counsel's failure to perform an essential duty. *Clay*, 824 N.W.2d at 496. Prejudice exists where a claimant proves " 'a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.' " *Bowman v. State*, 710 N.W.2d 200, 203 (Iowa 2006) (quoting *State v. Hopkins*, 576 N.W.2d 374, 378 (Iowa 1998)). A claimant must prove prejudice by a preponderance of the evidence. *Clay*, 824 N.W.2d at 496. A claimant need not establish it is more likely than not that counsel's deficient conduct altered the outcome in the case. *Id.* Instead, a claimant need only show " 'that the probability of a different result is sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Maxwell*, 743 N.W.2d at 196). "In determining whether this standard has been met, we must consider the totality of the evidence, what factual findings would have been affected

by counsel's errors, and whether the effect was pervasive or isolated and trivial." *State v. Graves*, 668 N.W.2d 860, 882–83 (Iowa 2003).

More specifically, to demonstrate prejudice in the plea-bargaining process "a [claimant] must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at ___, 132 S. Ct. at 1384, 182 L. Ed. 2d at 407. Here, Dempsey has alleged prejudice resulting from counsel's ineffectiveness in accurately advising him of the exact terms and potential sentencing outcomes of the first plea offer, such that he rejected the first plea offer to his detriment. To prove prejudice under these circumstances, Dempsey must demonstrate: (1) "a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel"; (2) "a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law"; and (3) "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at ___, 132 S. Ct. at 1409, 182 L. Ed. 2d at 392. In establishing a reasonable probability a claimant would have accepted the earlier plea offer had he or she received effective assistance of counsel, a claimant must proffer more than his or her own subjective, self-serving testimony. *State v. Tate*, 710 N.W.2d 237, 241 (Iowa 2006) (" '[C]onclusory claims of prejudice' are not sufficient to satisfy the prejudice element." (quoting *State v. Myers*, 653 N.W.2d 574, 579 (Iowa 2002))); *see also United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) (requiring "objective evidence" defendant would have accepted a plea offer); *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991) (same); *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir.

1991) (same); *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir. 1988) (same), *vacated on other grounds*, 492 U.S. 902, 109 S. Ct. 3208, 106 L. Ed. 2d 559 (1989); *People v. Hale*, 996 N.E.2d 607, 614 (Ill. 2013) (same). Rather, a claimant must proffer objective, corroborating evidence that his or her rejection of the plea offer was based on counsel's unprofessional errors, as opposed to other considerations. *See Tate*, 710 N.W.2d at 241; *see also Gordon*, 156 F.3d at 381; *Fairman*, 940 F.2d at 1068; *Hale*, 996 N.E.2d at 614. For example, the disparity between the sentence a defendant faced and a significantly shorter sentence in the plea offer can support a defendant's claim of prejudice. *Hale*, 996 N.E.2d at 614 ("The disparity between the sentence a defendant faced and a significantly shorter plea offer can be considered supportive of a defendant's claim of prejudice."); *see also Gordon*, 156 F.3d at 381 (finding great disparity between actual maximum sentencing exposure and sentencing exposure represented by defendant's attorney provided sufficient objective evidence to support prejudice element).

Dempsey claims counsel's failure to accurately inform him of the exact terms and potential sentencing outcomes of the first plea offer fell below the standard of a reasonably competent practitioner and caused him to forgo a favorable plea offer to his detriment. Dempsey claims that had counsel accurately informed him that the first plea offer required him to plead guilty to only two misdemeanors, as opposed to one misdemeanor and one felony, and accurately advised him of the potential sentencing outcomes, he would have accepted the first plea offer. In our de novo review of the record, and giving appropriate weight to the presumption that counsel performed his duties competently, it is unlikely Dempsey has proven counsel's failures fell below the objective standard of reasonableness. However, we need not decide that issue

here. Rather, we conclude this case can be decided under the prejudice prong, so we now turn to this analysis.

First, we must decide if Dempsey has offered sufficient objective evidence that he would have accepted the first plea offer had he received effective assistance of counsel. Then we must ultimately determine if there is a reasonable probability Dempsey would have accepted the first plea offer absent counsel's deficiencies. We note at the outset that a defendant's decision to accept or reject a plea offer can be affected by a variety of factors. Some of these factors include a full understanding of the pending charges, a full understanding of the charges contained in a plea offer, and an understanding of the possible sentencing consequences associated with accepting a plea offer or proceeding to trial. Taking these various factors into consideration, we now examine the record to analyze the prejudice prong of Dempsey's ineffective-assistance-of-counsel claim.

We begin by comparing the actual sentencing exposure faced by Dempsey under the trial information with the sentencing exposure counsel represented to him. If Dempsey had proceeded to trial and was convicted of all the charges in the trial information, he faced maximum total sentences of sixteen years in prison and a mandatory minimum of three and two-fifths years.[4] However, in the April 28, June 26, and June

---

[4]Dempsey faced up to ten years in prison under Count I, *see* Iowa Code § 713.5 (establishing second-degree burglary as a class "C" felony); *id* § 902.9(4) (establishing maximum penalty for class "C" felonies as "no more than ten years"), up to two years in prison under Count II, *see id.* § 713.7 (establishing possession of burglar's tools as an aggravated misdemeanor); *id.* § 903.1(2) (establishing maximum penalty for aggravated misdemeanors as "imprisonment not to exceed two years"), and two years in prison under Count III, enhanced to a maximum of four years with a mandatory minimum of three-and-two-fifths years, *see id.* § 709.11 (establishing assault with intent to commit sexual abuse not resulting in injury as an aggravated misdemeanor); *id.* § 901A.2(1) (establishing enhanced penalty and mandatory minimum for person convicted of sexually predatory offense when current offense is aggravated misdemeanor and person has prior conviction for sexually predatory offense); *id* § 903.1(2) (establishing

29 letters counsel sent to Dempsey, counsel mistakenly advised him that he faced up to seventeen years in prison if convicted of all the charges in the trial information. This was inaccurate by one year. Under the terms of the first plea offer, Dempsey faced up to six years in prison with a mandatory minimum of three and two-fifths years.[5] This is the same prison term Dempsey faced under the trial information without the felony charge for second-degree burglary and its attendant ten-year sentence. However, in the June 29 letter counsel sent to Dempsey, counsel advised Dempsey that if the district court ordered his sentences to run concurrently, he could face up to five years in prison for his pleas. This was also inaccurate by one year, as if the district court ordered his sentences to run concurrently, he would face up to four years in prison for his pleas to the two aggravated misdemeanors.

Notwithstanding these inaccuracies, and in no way minimizing the significance of a year in prison, we cannot conclude counsel's errors with respect to the sentencing consequences Dempsey faced under either the trial information or the first plea offer—in each instance a difference of one year—were so great as to rise to the level necessary to establish prejudice. A significant disparity between the actual sentencing exposure faced by a defendant and the sentencing exposure counsel

_____

maximum penalty for aggravated misdemeanors as "imprisonment not to exceed two years").

[5]Pursuant to the terms of the first plea offer, Dempsey faced up to two years in prison under Count II, *see id.* § 713.7 (establishing possession of burglar's tools as an aggravated misdemeanor); *id.* § 903.1(2) (establishing maximum penalty for aggravated misdemeanors as "imprisonment not to exceed two years"), and two years in prison under Count III, enhanced to a maximum of four years with a mandatory minimum of three-and-two-fifths years, *see id.* § 709.11 (establishing assault with intent to commit sexual abuse not resulting in injury as an aggravated misdemeanor); *id.* § 901A.2(1) (establishing enhanced penalty and mandatory minimum for person convicted of sexually predatory offense when current offense is aggravated misdemeanor and person has prior conviction for sexually predatory offense); *id* § 903.1(2) (establishing maximum penalty for aggravated misdemeanors as "imprisonment not to exceed two years").

represents to the defendant is a factor we must consider. However, we cannot conclude counsel's errors in this respect, standing alone, objectively demonstrate a reasonable probability Dempsey would have accepted the first plea offer absent these deficiencies. Moreover, other than his own subjective, self-serving testimony, there is no other evidence in the record suggesting counsel's deficient advice regarding sentencing consequences influenced Dempsey's decision to reject the first plea offer.

Dempsey also claims that had counsel properly advised him that the first plea offer allowed him to plead guilty to two misdemeanors, as opposed to one misdemeanor and one felony, he would have accepted it. However, Dempsey still has offered no objective evidence as to how this knowledge affected his decision whether to accept or reject the first plea offer, other than his own subjective, self-serving testimony that it somehow did.

More significantly, the record established Dempsey's decision to reject the first plea offer was not the result of counsel's errors but rather the result of Dempsey's belief that he could win at trial. With respect to the first plea offer, counsel's June 29 letter to Dempsey clearly advised him that he would not receive a better offer. Counsel also warned Dempsey that if he rejected the offer, the State could increase the charges leading to even harsher potential sentences. Specifically, counsel advised Dempsey that the State "could upgrade the burglary charge [to first-degree burglary]" such that Dempsey "would face sentences totaling [thirty-two] years in prison." The letter advised Dempsey that if he elected to proceed to trial, he would lose. The letter repeated that if he lost at trial on the current charges, he could face sentences totaling seventeen years in prison. Finally, the letter stated, "If

you decide you want to take the deal, you should let me know <u>right</u> <u>away</u>." Thus, the letter clearly communicated to Dempsey he would not win at trial; he would not get a better offer; if he chose to go to trial, the consequences would be severe; and time was of the essence. This undercuts Dempsey's claim that counsel's errors caused him to reject the first plea offer. Rather, although counsel had repeatedly advised Dempsey that he faced a likely unfavorable outcome and likely harsh sentences, he elected to reject the first plea offer, proceed with his request for depositions, and wait and see if the critical witnesses appeared for their depositions.

Further, Dempsey's own testimony at the postconviction hearing undermines his credibility with respect to his claim that he rejected the first plea offer because counsel inaccurately informed of its exact terms and potential sentencing outcomes. On cross-examination, when the State asked Dempsey if his counsel had urged him to accept the first plea offer due to the risk the State would increase the burglary charge, Dempsey responded,

> That was [counsel's] opinion, yes, that it could be upgraded to First Degree Burglary if [the State] found out about [the alleged scratch]. But [the State] was already informed of it in the Trial Information. It clearly says that there was an alleged scratch.

Here, Dempsey's own testimony suggests that at the time of the first plea offer, he was not willing to accept any plea offer. His reasons were clearly unrelated to potential sentencing risks or whether the State had charged him with a felony. Counsel clearly advised him that the burglary charge, already a felony, could be increased with a substantial increase in his sentence. Nothing in this record supports the claim that Dempsey was concerned about either a felony conviction or an increase in his

sentence. What the record does disclose is that Dempsey repeatedly refused to follow the advice and recommendations of counsel as to the first plea offer and instead decided to take his chances down the road.

Additionally, the deposition testimony of Dempsey's former counsel provides an explanation as to why Dempsey rejected the first plea offer. Counsel testified that Dempsey indicated early on he wanted to proceed to trial because there was some doubt as to whether L.F. and K.R. would testify against him, given that Dempsey, L.F., and K.R. all knew each other. The June 29 letter further buttresses counsel's testimony that Dempsey was adamant about proceeding to trial. Counsel writes: "*Although you have expressed confidence in my ability to defend you*, I must be blunt that you are almost certain to lose at trial." (Emphasis added.). On July 10, while the first plea offer was still pending, counsel met with Dempsey at the jail to discuss the first plea offer and whether further discovery would be necessary. Dempsey did not accept the first plea offer, and counsel subsequently applied for and received permission to take the depositions of L.F. and K.R. These depositions were scheduled for July 24.

Prior to the scheduled depositions, Dempsey made no additional effort to discuss the first plea offer with counsel, nor would he accept the first plea offer. Prior to the scheduled depositions, there was still the possibility that L.F. and K.R. would not appear for their depositions. However, on July 24, both L.F. and K.R. appeared as scheduled. Once these witnesses appeared for depositions, the State withdrew the first plea offer, and any doubts that Dempsey may have had about their willingness to testify against him evaporated. Not surprisingly, when Dempsey realized that the critical witnesses against him were present

and willing to testify, he promptly accepted the second, less favorable plea offer.

In some cases the mere fact that a defendant later accepts a less favorable plea offer, as opposed to an earlier more favorable one, could demonstrate a reasonable probability a defendant would have accepted the earlier offer but for counsel's unprofessional errors. Here, however, the record does not support that conclusion. *See Frye*, 566 U.S. at ___, 132 S. Ct. at 1411, 182 L. Ed. 2d at 393 ("It may be that in some cases defendants must show more than just a guilty plea to a charge or sentence harsher than the original offer. For example, revelations between plea offers about the strength of the prosecution's case may make a late decision to plead guilty insufficient to demonstrate, without further evidence, that the defendant would have pleaded guilty to an earlier, more generous plea offer if his counsel had reported it to him."). This is not a case a case in which counsel altogether failed to provide a defendant with an earlier, more favorable plea offer. Here, counsel gave Dempsey the State's plea offer. Counsel explained to Dempsey that he faced a likely unfavorable outcome and likely harsh sentences. Dempsey had numerous opportunities to discuss the plea offer with counsel and decided to reject it. The record shows that Dempsey's decision to reject the first plea offer was motivated by his belief that L.F. and K.R. would not testify and that he could win at trial as a result. It was not the result of any deficiencies of counsel.

Finally, the timing of Dempsey's ineffective-assistance-of-counsel claim involving the first plea offer belies his claim of prejudice. As noted earlier, in 2009 Dempsey claimed counsel had been ineffective in failing to object to the district court's failure to inform him of the 901A.2(1) sentencing enhancement applicable due to his prior conviction for third-

degree sexual abuse. This claim was denied on direct appeal by the court of appeals. Then in 2010, Dempsey filed the present postconviction relief petition. The petition makes no claim that counsel was ineffective in the area of plea bargaining. The district court appointed counsel to represent Dempsey in the present action, and an amended petition was filed in May 2011. The amended petition also makes no claim that counsel was ineffective in the area of plea bargaining. In April 2012, Dempsey's counsel withdrew from the case, and a second attorney was appointed to represent Dempsey. No amendment claiming any deficiencies by counsel in the area of plea bargaining was made. Finally, at the postconviction trial in December 2012, four years after his pleas and sentences, and three years after the court of appeals denied his initial ineffective-assistance-of-counsel claims, Dempsey claimed for the first time that counsel was ineffective for failing to accurately inform him of the exact terms and potential sentencing outcomes of the first plea offer. The timing of this claim does not support a conclusion of prejudice.

Based on our de novo review of the record, Dempsey has not shown a reasonable probability he would have accepted the first plea offer had he been afforded effective assistance of counsel, or that the outcome of the plea process would have been different had counsel accurately informed him of the exact terms and sentencing outcomes of the first plea offer. Rather, Dempsey has presented little more than his own subjective, self-serving testimony in support of his claim that counsel's deficiencies affected his decision to reject the first plea offer. Moreover, the record established that Dempsey rejected the first plea offer for reasons unrelated to any deficiencies of counsel. Dempsey has failed to demonstrate the necessary prejudice to succeed on his

ineffective-assistance-of-counsel claim. The district court properly denied Dempsey's ineffective-assistance-of-counsel claims.

**IV. Conclusion.**

Dempsey has failed to establish the necessary prejudice to succeed on his ineffective-assistance-of-counsel claim. Counsel may have been ineffective for failing to accurately inform Dempsey of the exact terms and sentencing outcomes of the first plea offer. However, Dempsey failed to establish a reasonable probability he would have accepted the first plea offer had counsel accurately informed him of its exact terms and potential sentencing outcomes. Dempsey also failed to show the outcome of the plea process would have been somehow different with competent counsel. We vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**