# IN THE COURT OF APPEALS OF IOWA

No. 15-0710
Filed May 25, 2016

**JUSTIN JENTZ,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter, Judge.

        Justin Jentz appeals the denial of his postconviction relief application, alleging his trial counsel was ineffective for failing to inform him he faced a felony charge and that, absent this failure, Jentz would have entertained the plea offers extended by the State. **AFFIRMED.**

        John J. Sullivan of Sullivan Law Office, P.C., Oelwein, for appellant.

        Thomas J. Miller, Attorney General and, Kyle P. Hanson, Assistant Attorney General, for appellee State.

        Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

In February 2011, Justin Jentz was charged with operating while intoxicated and possession of a controlled substance, the latter of which was subject to an enhancement based on previous drug convictions. Jentz was found guilty of both charges in June 2012. The district court sentenced Jentz to 180 days for the operating-while-intoxicated charge and up to five years imprisonment for the possession conviction to run concurrently. Jentz appealed his conviction. This court affirmed his conviction but preserved an ineffective-assistance claim Jentz raised on direct appeal. *See State v. Jentz*, No. 12-1619, 2013 WL 5949667, at *1 (Iowa Ct. App. Nov. 6, 2013).[1] Jentz filed an application for postconviction relief (PCR), which the PCR court denied in April 2015. In his appeal of the PCR court's ruling, Jentz contends his trial counsel was ineffective for failing to inform him he faced a felony charge and that, absent this failure, Jentz would have entertained the plea offers extended by the State.

In order to prove an ineffective-assistance-of-counsel claim, an appellant must show by a preponderance of the evidence that counsel (1) failed to perform an essential duty and (2) prejudice resulted. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). We can resolve ineffective-assistance-of-counsel claims under either prong. *State v. Ambrose*, 861 N.W.2d 550, 556 (Iowa 2015). We review ineffective-assistance claims de novo. *State v. Finney*, 834 N.W.2d 46, 49 (Iowa 2013).

---

[1] The facts underlying the charges brought against Jentz and the procedural background of Jentz's conviction are set forth in this court's prior order and are thus not restated herein. *See Jentz*, 2013 WL 5949667, at *1-3.

It is undisputed, and the record reflects, Jentz's trial counsel was unaware the previous drug-conviction enhancement made the possession-of-a-controlled-substance charge a class "D" felony rather than an aggravated misdemeanor. It is further undisputed that Jentz's trial counsel failed to advise Jentz he was facing a felony and that, prior to trial, Jentz rejected offers to plead guilty to a misdemeanor. Assuming, based on these facts, Jentz's trial counsel failed in an essential duty, Jentz still must prove this failure prejudiced him.

"A defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015). Under the prejudice prong of an ineffective-assistance-of-counsel claim, Jentz must prove "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citation omitted). This must be shown by a preponderance of the evidence. *Id.* at 868-69. "[T]o demonstrate prejudice in the plea-bargaining process 'a [claimant] must show the outcome of the plea process would have been different with competent advice.'" *Id.* at 869 (second alteration in original) (citation omitted). Where, as here, a defendant alleges his counsel's ineffective assistance resulted in his rejection of a plea offer to his detriment, the defendant must prove:

> (1) "a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel";
> (2) "a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law"; and (3) "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."

*Id.* (alterations in original) (citation omitted). "In establishing a reasonable probability a claimant would have accepted the earlier plea offer had he or she received effective assistance of counsel, a claimant must proffer more than his or her own subjective, self-serving testimony." *Id.* "Rather, a claimant must proffer objective, corroborating evidence that his or her rejection of the plea offer was based on counsel's unprofessional errors, as opposed to other considerations." *Id.*

Jentz argues he has met the first element because (1) he testified at the PCR hearing it was likely he would have accepted the plea offer had his trial counsel informed him he had been charged with a felony and was facing up to five years in prison and (2) the disparity in his punishment corroborates his statement. *See id.* ("For example, the disparity between the sentence a defendant faced and a significantly shorter sentence in the plea offer can support a defendant's claim of prejudice.").

At the PCR hearing, Jentz's PCR counsel asked him, "Did you reject plea offers that you would have accepted if you'd known you were facing a felony?" Jentz responded, "Yes." When asked again whether he would have accepted the plea had he known he was facing a felony charge, Jentz responded, "Had I known, I can't say whether I would have or would not have accepted it, but I'd have definitely took [sic] it into more consideration. I probably would have accepted it knowing that I was facing more time than two years." Jentz then later stated, "I didn't know I was looking at the felony or the five-year sentence, otherwise I would not have went [sic] to trial."

When asked why he would have accepted the plea, Jentz reasoned a felony "takes away my gun rights, that takes away everything." Jentz subsequently admitted he had multiple prior felony convictions but argued, "I was almost past the point where I could start applying for those things back." Ultimately, he concluded, "I did more prison time because of it being a felony. I thought I was looking at two years instead of five."

Jentz's PCR hearing testimony is indecisive at best. Even if his testimony could support a "reasonable probability" he would have accepted the plea, Jentz must provide more than his own self-serving statements. *See Kirchner v. State*, 756 N.W.2d 202, 206 (Iowa 2008) (finding no prejudice where the defendant "offered no evidence to support his self-serving statement that he would have accepted the plea deal had he known" information his trial counsel failed to disclose). His rationale for acceptance was his desire to maintain his gun rights and other unspecified rights—rights he had already forfeited through prior felony convictions.

Further, as noted by the PCR court, the requisite "reasonable probability" is undermined by Jentz's willingness to proceed with his PCR application even though the State has threatened to charge Jentz as a habitual offender if the original conviction were vacated. Prior to trial, Jentz was offered a plea deal of a 180-day jail sentence for the operating-while-intoxicated charge and a 365-day jail sentence on the possession-of-marijuana charge, both to run concurrently. At the time Jentz rejected this plea offer, Jentz understood he faced a maximum two-year sentence for the possession-of-a-controlled-substance charge and six

months for the operating-while-intoxicated charge.[2] Thus, his argument is he was willing to risk a potential two-and-a-half-year sentence but not a five-year sentence. Yet he is now willing to risk a potential fifteen-year sentence with a three-year mandatory minimum when he has already served his time under the original sentence and been discharged.

As to the second element, there is no evidence supporting "a reasonable probability the plea would have been entered without the prosecution canceling it." *See Dempsey*, 860 N.W.2d at 869. At trial, the State admitted the plea offers were made with the assumption that both charges Jentz faced were aggravated misdemeanors. There is no indication in the record that the State would have made the same offer once the possession-of-a-controlled-substance charge was elevated to a class "D" felony by virtue of the the previous drug-conviction enhancement.

Jentz has failed to provide evidence beyond his own self-serving, indecisive statements that he "probably would have" taken the plea or that the plea would have been entered without the prosecution cancelling it. On our de novo review, we affirm the PCR court's denial of Jentz's PCR application.

**AFFIRMED.**

McDonald, J., concurs; Potterfield, P.J., dissents.

---

[2] The record suggests he expected to earn credits and be released from incarceration in less than a year.

**POTTERFIELD, Presiding Judge.** (dissenting)

I respectfully dissent. I would grant Jentz's application for postconviction relief. Jentz has shown his counsel did not inform him that he was facing a class "D" felony drug charge rather than the aggravated misdemeanor charge he believed he faced. Counsel breached an essential duty to Jentz in failing to advise him of the seriousness of the charge and the prison time he faced.

Jentz's burden under *Dempsey,* then, is to show a "reasonable probability" that (1) he would have accepted the plea offer, (2) the prosecution would not have withdrawn the offer and the trial court would not have refused to accept it, (3) and the end result would have been more favorable. *See Dempsey v. State*, 860 N.W.2d 860, 869 (Iowa 2015).

Jentz's testimony met the first factor to a reasonable probability when he said he would have accepted the offer to plead guilty to a misdemeanor had he known he was facing a felony, and he would not have gone to trial if he had known he faced a felony. Jentz also testified under questioning that he could not say whether he would have accepted the plea offer but he would have given it more consideration and probably would have accepted it.

Jentz's burden of proof required him to testify about his thought process in refusing the plea offer. Of course, his testimony, like that of most witnesses, is "self-serving." He was not indecisive, despite his one detour from his otherwise unequivocal statements he would have accepted the plea offer, saying he certainly would have given the offer greater consideration and probably would have accepted it. Nor do his statements about the collateral effects of a felony conviction disqualify his testimony—the disparity in time to be served is sufficient

and is the point to which Jentz returns in his testimony. His testimony as a whole is rational and sufficient for a reasonable probability.

The disparity between the five years he unknowingly faced and the two years he was offered is a "significantly shorter" sentence, which corroborated his testimony. *See id.* at 869 ("[T]he disparity between the sentence a defendant faced and a significantly shorter sentence in the plea offer can support a defendant's claim of prejudice."). Jentz thought the plea offer contained no charging concession, since he and his counsel (and apparently the prosecutor) believed the State had charged him with an aggravated misdemeanor. Jentz met his burden on the third factor, a better outcome.

The State did not suggest the court or the prosecutor would have withdrawn the offer or refused the plea, a factor about which Jentz ordinarily would not have personal knowledge.

Finally, the majority relies on Jentz's apparent willingness to risk an enhanced habitual offender enhancement threatened by the State if the court vacated his original conviction. Jentz is not required to prove he always makes good decisions, nor that he does not have any experience with the criminal justice system. His burden was to show misinformation about the one critical decision—the plea offer—affected his decision in that one instance. He met his burden to a reasonable probability.

I would find Jentz carried his burden under *Dempsey*, *see id.*, and reverse the district court's denial of the application for postconviction relief.