# IN THE COURT OF APPEALS OF IOWA

No. 19-1036
Filed April 14, 2021

**DONTRELL NEAL,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Robert B. Hanson,
Judge.

        The applicant appeals the denial of his application for postconviction relief.
**AFFIRMED.**

        Susan R. Stockdale, West Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney
General, for appellee State.

        Considered by Vaitheswaran, P.J., Mullins, J., and Potterfield, S.J.*  Blane,
S.J., takes no part.

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2021).

**POTTERFIELD, Senior Judge.**

Dontrell Neal appeals from the denial of his application for postconviction relief (PCR). Here, he revives just two claims, alleging trial counsel provided ineffective assistance by failing (1) to file a motion to sever the two counts against him and (2) to inform him—in the context of his considering whether to accept a plea offer from the State—that content from phone calls he made from jail would be used against him by the State during a trial.

**I. Background Facts and Proceedings.**

The underlying facts, as taken from Neal's direct appeal:

> In the early morning hours of February 10, 2014, an armed man entered a Kum & Go gas station on the eastside of Des Moines. The man trained his handgun on the store clerk, Victor Moody, and demanded money from the registers. Moody complied, putting the cash inside a brown paper bag. After the man left the store, Moody immediately called the police to report the robbery, describing the perpetrator as wearing a black-hooded sweatshirt, black jeans, and a scarf over his mouth.
>
> Des Moines Police Officer Brian Buck, who was on patrol nearby, headed toward the store. But as the officer approached, he noticed a green Yukon travelling away from Kum & Go. Although he was unable to see the driver, the vehicle caught Officer Buck's attention because of its proximity to the Kum & Go and the circuitous route it was taking to travel east. Officer Buck followed the Yukon for about four blocks before initiating a traffic stop. As Officer Buck activated his lights, the Yukon accelerated into a driveway, striking two parked cars before coming to a stop. The driver jumped out of the vehicle and ran. Believing the driver's clothing matched the description provided by Moody, Officer Buck pursued on foot.
>
> When Officer Buck lost sight of the driver in a residential neighborhood, he decided to wait for the arrival of reinforcements, including a K–9 unit. The officers then tracked the path of the driver through the snow and located a paper bag filled with money on the ground behind the address where Officer Buck initially gave up his foot chase. Shortly thereafter, another officer located the driver a few blocks away and identified him as Dontrell Neal. After taking Neal into custody, the officers returned to the area of the foot chase. They followed the footprints in the snow from the driveway where Neal left his Yukon to the backyard of the same residence and found

a loaded handgun partially buried in the snow next to the footprints. Inside Neal's vehicle, officers found a gray stocking cap and black t-shirt.

Within approximately one-half hour of the robbery report, officers picked up Moody from the convenience store and brought him to the neighborhood where they had apprehended Neal. The officers directed their lights on the suspect and asked Moody if Neal was the person who had robbed the store. While unable to make a positive identification based on the suspect's face, Moody identified Neal as the robber based on his clothing.

*State v. Neal*, No. 15-0886, 2016 WL 4384621, at *1 (Iowa Ct. App. Aug. 17, 2016). Neal was later charged with first-degree robbery and being a felon in possession of a firearm.

In January 2015, he reached a plea agreement with the State, whereby he would plead guilty to the reduced charge of second-degree robbery and the State would dismiss the felon-in-possession-of-a-firearm charge and a charge for driving while barred, which Neal had pending in another case. But at the time of the scheduled plea hearing on January 20, Neal decided to reject the agreement and go to trial instead.

The next day, the State filed a motion asking the court to make a pretrial ruling on the admissibility of phone calls Neal made while in jail. According to the State's motion, Neal "made over a thousand phone calls from his account" while in custody and the State "intend[ed] to offer portions of several calls as statement by a party opponent." The State indicated Neal had been given a copy of the relevant phone calls. Defense counsel filed a response on January 23, stating he did not believe a hearing was necessary so long as the court required the State to provide the necessary foundation for and redact inadmissible portions of the calls.

The court filed an order granting the State's motion on the conditions agreed upon by Neal.

A few days later, Neal failed to appear for his jury trial. A bench warrant was issued for his arrest, and he was apprehended about a month later. Once back in custody, Neal again indicated he wanted to plead guilty. The State offered to dismiss the felon-in-possession-of-a-firearm charge and Neal's driving offenses and not to file a new charge for failure to appear if Neal pled guilty to first-degree robbery. Another plea hearing was scheduled and at that hearing, on February 26, Neal again decided to reject the agreement and proceed to trial.

Neal's jury trial commenced on March 30. After the opening arguments but before the State began presenting evidence, the court read to the jury three stipulations Neal had signed, including that Neal was convicted of a felony prior to the date of these alleged incidents. As part of the State's evidence, the prosecutor introduced into evidence three portions of jailhouse phone calls Neal made to his wife in which Neal made seemingly incriminating statements.

The jury convicted Neal of both charges. He was later sentenced to two consecutive terms of imprisonment, for a total not exceed thirty years. He appealed, and this court affirmed his convictions and sentences. *Neal*, 2016 WL 4384621, at *5.

Neal filed an application for PCR, which he later amended with the assistance of counsel. That application included several claims alleging Neal received ineffective assistance from his trial and appellate counsel. The district court denied it in its entirety. Neal appeals.

**II. Standard of Review.**

We typically review PCR proceedings for errors at law. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). But claims of a constitutional nature, such as ineffective assistance of trial counsel, we review de novo. *Id.*

**III. Discussion.**

Neal maintains he received ineffective assistance from trial counsel. "[A]ll [PCR] applicants who seek relief as a consequence of ineffective assistance of counsel must establish counsel breached a duty and prejudice resulted." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (first alteration in original) (citation omitted). "We may affirm the district court rejection of an ineffective-assistance-of-counsel claim if either element is lacking." *Id.* (citation omitted).

When considering the first prong, "[w]e start with the presumption that the attorney performed competently and proceed to an individualized fact-based analysis." *Id.* "Trial counsel has no duty to raise an issue that has no merit." *State v. Graves*, 881 (Iowa 2003). "When counsel makes a reasonable tactical decision, this court will not engage in second-guessing." *Lamasters*, 821 N.W.2d at 866. (citation omitted). "The fact that a particular decision was made for tactical reasons does not, however, automatically immunize the decision from a Sixth Amendment challenge." *Graves*, 668 N.W.2d at 881. To establish prejudice, Neal "must show his counsel's 'errors were so serious as to deprive [him] of a fair trial.'" *Lamasters*, 821 N.W.2d at 866 (alteration in original) (citation omitted). In other words, even if the applicant "can show his counsel made a professionally unreasonable error, the judgment shall not be set aside unless it can be shown the error had an effect on the judgment." *Id.*

### A. Severing Counts.

Neal maintains his trial counsel provided ineffective assistance in failing to move to sever the felon-in-possession-of-a-firearm charge from the charge of first-degree robbery. He contends this failure to sever prejudiced him because, while it was necessary for the jury to know he was found guilty of a felony before February 10, 2014 regarding the felon-in-possession-of-a-firearm charge, the information was inconsequential and unduly prejudicial as to whether he was the person who committed the robbery.

Iowa Rule of Criminal Procedure 2.6(1) provides that multiple offenses "which arise from the same transaction or occurrence . . . when alleged and prosecuted contemporaneously, shall be alleged and prosecuted as separate counts in a single complaint, information or indictment, unless, for good cause shown, the trial court in its discretion determines otherwise." Because Neal brings his claim under the framework of ineffective assistance and because counsel only has a duty to pursue issues that have merit, we consider whether a motion to sever would have been successful. *See State v. Owens*, 635 N.W.2d 478, 482 (Iowa 2001) ("The question is whether, had the motion to sever been made by trial counsel, the court would have exercised its discretion to sever the felon-in-possession charge from the others."). "[T]he burden would have rested upon [Neal] to prove that any prejudice resulting to him from a joint trial outweighed the State's interest in judicial economy." *Id.*

While we recognize the risk of prejudice from informing the jury of the defendant's prior felony conviction when it is not an element of one of the charges, there is no per se rule "compelling severance whenever the State charges a felon

with being in possession of weapons along with other related charges." *Id.* The trial court must "strik[e] a proper balance between the 'antipodal themes of ensuring [a] defendant a fair trial and preserving judicial efficiency.'" *Id.* (second alteration in original) (citation omitted). Like in *Owens*, where out supreme court concluded "the trial court met the challenge" of balancing the two, here, the jury was informed of Neal's prior felony conviction in a one-sentence stipulation. *Id.* at 482–83. The court read the stipulation to the jury right before the State called its first witness; the entire stipulation[1] was: "Prior to February 10, 2014, the defendant was convicted of a felony." *Id.* ("The specific felony was not identified, nor were facts concerning the crime detailed for the jury."). Unlike *Owens*, the court here did not give the jury an instruction limiting its use of the prior felony conviction for the felon-in-possession charge. *Id.* at 483. But we do not think that swings the balance to prejudicing Neal's right to a fair trial; the evidence linking Neal to the firearm was mostly the same evidence linking him to the robbery, so the State's interest in not having to produce identical evidence to two separate juries was strong. *See id.*

We cannot say Neal has made the necessary showing to establish a motion to sever should have been granted. So his trial counsel did not breach an essential duty in failing to raise the issue, and this claim fails.

**B. Jailhouse Phone Calls.**

Neal maintains he would have pled guilty at his first scheduled plea hearing, on January 20, 2015, if his attorney had "kept him informed of the evidence against

---

[1] Two other unrelated stipulations were also read to the jury. The felony stipulation was the second of the three, and the court read them one after another.

him." Specifically, he references jailhouse phone calls he made to his wife, three of which the State admitted as evidence against Neal at his trial. To succeed on a claim of ineffective assistance involving a rejected plea, "'a [claimant] must show the outcome of the plea process would have been different with competent advice.'" *Dempsey v. State*, 860 N.W.2d 860, 869 (Iowa 2015) (alteration in original) (quoting *Lafler v. Cooper*, 566 U.S. 156, 163 (2012)). "In establishing a reasonable probability a claimant would have accepted the earlier plea offer had he or she received effective assistance of counsel, a claimant must proffer more than his or her own subjective, self-serving testimony." *Id.* "A claimant must proffer objective, corroborating evidence that his or her rejection of the plea offer was based on counsel's unprofessional errors, as opposed to other considerations." *Id.*

First, Neal's claim is based on the assumption that counsel had a duty to inform him the State would use certain phone calls against him at trial by the time he decided to reject the plea offer on January 20. But the record does not establish that his trial counsel—or even the State for that matter—knew those specific calls would be used. By Neal's own statement—corroborated by others—Neal made "over a thousand phone calls" while in the county jail. Neal's trial attorney, who testified at the PCR hearing by way of deposition, said she "knew that there were jail phone calls very early on" and she discussed those phone calls with Neal "extensively because they were incriminatory." However, she also remembered that different prosecutors were assigned to the case and how each "chose to use [the phone calls]" and "edited" them differently. Similarly, Neal testified at the PCR hearing that as of January 20, he was aware "there was a variety, over a thousand

calls that were made. And that the [S]tate intended to use some of them but not . . . [t]he specific content of any of the phone calls or the actual phone calls they were going to use." It was not until January 21—a day after Neal rejected the plea—that the prosecutor filed a motion asking the court to rule on the admissibility of the specific phone calls before trial.

Both Neal's trial counsel and Neal—as the caller—were aware Neal made a large number of calls from the county jail and that some portion of the content would be part of the State's case. While it does not seem his trial counsel advised him exactly what edited portion of three of those calls would be used at trial by the time Neal rejected the plea on January 20, both knew the State had access to recordings of those calls, some of the calls at least seemed incriminating, and the State would be using some against Neal if he proceeded to trial. Neal has not proved counsel breached an essential duty, so this claim fails.

## IV. Conclusion.

Neal failed to prove counsel breached an essential duty in either of his ineffective-assistance claims. Both claims fail, and we affirm the district court ruling denying his application for PCR.

**AFFIRMED.**