# IN THE COURT OF APPEALS OF IOWA

No. 18-1304
Filed December 18, 2019

**FRANK JOHN NUCARO,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

    Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


    Frank Nucaro appeals the denial of his application for postconviction relief.

**AFFIRMED.**



    Nicholas Einwalter, Des Moines, for appellant.

    Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant

Attorney General, for appellee.



    Considered by Bower, C.J., and Vaitheswaran and Doyle, JJ.

**BOWER, Chief Judge.**

Frank John Nucaro appeals the denial of his application for postconviction relief (PCR). He claims the postconviction court erred in finding his trial counsel did not provide ineffective assistance and his probation revocation hearing violated his procedural due process rights. We find Nucaro waived any notice requirement and he failed to establish ineffective assistance of counsel. We affirm.

## I.       Background Facts & Proceedings

On September 8, 2016, Nucaro pleaded guilty to seven criminal offenses arising from six separate criminal cases.[1] The court sentenced Nucaro to consecutive sentences for a total of eighteen years of incarceration, but the court suspended all the sentences and placed him on probation at a residential facility.

Nucaro's probation officer filed a report of probation violation on December 13, stating Nucaro had left the residential facility program, failed to complete required programming, and failed to make payments on his court costs and fees. On December 30, Nucaro stipulated to violating his probation by absenting himself from the residential treatment program. The court ordered Nucaro to report to his probation officer by January 4, 2017, to reside at a residential facility as scheduled by the probation officer, and pay all case-related financial obligations. Nucaro states he tried to report to his probation officer on January 4 and 5 and called several times, but never connected with the officer.

---

[1] The offenses included five theft charges of varying degrees, domestic abuse assault causing bodily injury, and first-degree harassment. The charges were all filed between March and July 2016.

A second violation report was filed on February 9, 2017. This violation report specified Nucaro had not made any payments on his court-ordered fines and costs, a home visit by the probation officer on January 11 revealed Nucaro did not live at the address provided, and Nucaro failed to complete residential treatment or to enroll in a domestic abuse program.

On April 4, Nucaro was charged with an additional criminal offense. The court addressed both the new charge and Nucaro's probation violation at a May 10 hearing. In its July 13, 2018 ruling, the postconviction court summarized the underlying proceedings as follows:

> At that hearing, an agreement was reached that Nucaro would plead guilty to the [operating a motor vehicle without owner's consent (OMVOC)] charge, and that he would agree to have his probation revoked and be sentenced to a total of [ten] years ([two] felonies consecutive to each other, with the other charges concurrent). At the time this agreement was reached, the new OMVOC charge had not been made a part of the written report of violations filed by Nucaro's probation officer. Likewise, no written stipulation was executed specifying which terms of Nucaro's probation were agreed had been violated. During the hearing that ensued, the terms of the global resolution were dictated into the record by the prosecutor. When offered his right of allocution on all matters, Nucaro addressed the court as follows:
>
>> Well, Your Honor, I have to be honest because I'm a pastor, and I screwed up. I had [thirteen] years, nine months clean. I was a pastor for seven years. I went through a rough divorce, and my kids haven't spoken to me in a couple of years. My wife has cancer, and I've had a lot on my plate. . . .
>>
>> It's been a rough couple years. And I just want to say I take responsibility. I'm sorry for my actions. I contacted my [probation officer] nine times, went and saw him on two of my appointments, and he wasn't available. Never contacted me back within that two-week period. I told him my wife has cancer, and I have to take her to appointments. Plus, I drive a semi, and I'm a part-time pastor, so I have a pretty busy schedule.

> And I don't know why these things happened, but the last message I left him was that when you find time or you think you can find time for me, you call me because I'm busy, after two times of going to the appointments and calling him nine times.
>
> But this is very rough on me right now. Like I said, I'm responsible for my own actions. I can be honest and tell you that. I just think—wish things were different, but we're all responsible for our own behaviors.

When the court asked during the plea and revocation hearing if Nucaro wanted to accept the plea agreement, Nucaro clearly stated he did. Nucaro then asked for mercy in the court's sentencing decision and requested time served on the misdemeanors. The court again asked if he wanted the plea deal, and Nucaro said, "Yes, Your Honor."

The resulting revocation sentencing order stated Nucaro stipulated his probation violation was "leaving treatment at the Fort Des Moines residential facility without completing programming, new conviction." Nucaro, who had never started treatment at Fort Des Moines, filed an application for a nunc pro tunc order, asking for the order to "correctly represent which terms of the defendant's probation he violated."

During a July 27, 2017 hearing on the application for nunc pro tunc, Nucaro challenged the stipulation of leaving Fort Des Moines. Nucaro also argued that because the February violation report did not include the new offense, the court should not have allowed a stipulation to the April offense as a probation violation. The court ruled against Nucaro, finding the offense could be used as a basis for probation revocation because Nucaro stipulated to having committed and pleaded guilty to the new offense. The court entered an order amending the probation

revocation stipulation to state "[Nucaro] violated his probation by committing the new offense. . . . The defendant does not stipulate that he violated probation in any other way."

On September 4, 2017, Nucaro filed an application for postconviction relief. After several amendments, the final application alleged three types of claims: (1) ineffective assistance of trial counsel for failing to adequately investigate defenses, pressuring Nucaro into stipulating to probation violations, and failing to object to inclusion of the new charge as a violation of probation; (2) unlawful probation revocation and illegal custody; and (3) violation of Nucaro's due process rights in the probation revocation and disposition.

Nucaro's postconviction trial was held May 31, 2018. Nucaro testified and a deposition of his trial counsel was admitted into evidence. Nucaro did not offer any new evidence of the defenses he claimed trial counsel should have investigated. The postconviction court found Nucaro stipulated to the allegations within the violation report, understood the benefit he was receiving from the State, and chose to accept the offer. The court found Nucaro's counsel did not violate his duty by failing to investigate defenses, of which Nucaro failed to present evidence at the postconviction trial. The court denied Nucaro's application for postconviction relief. Nucaro appeals.

## II. Standard of Review

We generally review postconviction proceedings for correction of errors at law. *Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011). We review constitutional claims de novo. *Id.*

### III.    Analysis

The Supreme Court has set out the procedural due process that must be afforded to a defendant in a probation revocation proceeding.  *See Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (listing the minimum requirements for procedural due process to be afforded a parolee at a parole revocation hearing); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (holding that "a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey*").   Written notice of the claimed probation violation is one requirement.  *Morrissey*, 408 U.S. at 489.  On appeal, Nucaro claims he was not provided with written notice that his April 4, 2017 charge and subsequent plea would be used against him in the probation revocation.

Nucaro entered into a plea agreement with the State encompassing both his new charge and the probation revocation.  As part of the agreement, the parties agreed Nucaro would plead guilty to a lesser-included offense, receive credit for time served for the new charge, and several of Nucaro's misdemeanor sentences—which had previously been ordered to run consecutively—would run concurrent to the felony sentences, reducing his prison sentence from eighteen–to–twenty years to ten years.[2]  Nucaro now claims he would not have entered into the plea agreement had his counsel investigated mitigating factors relating to his probation violations.  At his postconviction trial, Nucaro stated he felt counsel "bullied" him into accepting the plea deal.

---

[2] The offense Nucaro pleaded guilty to has a two-year sentence.  Due to the plea agreement reached, the sentence—which may have run consecutively without the agreement—was ordered to run concurrently.

Nucaro entered into and received the benefit from the global plea agreement encompassing both the new offense and his probation revocation. He had notice of the hearing, which would address his probation violations. Nucaro was aware of his new offense and agreed to plead guilty to it before the revocation hearing. The purposes of providing a probationer with notice of a violation are to inform the probationer of the "inquiry, its purpose, and the alleged violations," and to provide the person time to present relevant information and question adverse informants. *See Morrissey*, 408 U.S. at 486–87. Those purposes were met here. Moreover, Nucaro has failed to establish any prejudice resulted from the notice of violation not being amended prior to his entering his plea. *See Univ. of Iowa Hosps. & Clinics v. Waters*, 674 N.W.2d 92, 98 (Iowa 2004) ("A showing of prejudice is essential to establishing a due process violation." (citation omitted)).

Nucaro also claims his trial counsel provided ineffective assistance during his probation revocation hearing. "To establish an ineffective-assistance-of-counsel claim, a claimant must demonstrate '(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice.'" *State v. Madsen*, 813 N.W.2d 714, 723 (Iowa 2012) (citation omitted)). "The claimant must prove both elements by a preponderance of the evidence." *Id.* at 724. Counsel's performance is presumed competent, and we measure it "against the standard of a reasonably competent practitioner." *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) (citation omitted). To prove prejudice, the claimant must establish by a preponderance of evidence that counsel's unprofessional errors undermine confidence in the outcome of the proceeding. *Id.* at 868–69.

In particular, Nucaro claims counsel failed to adequately investigate potential defenses and mitigation to the probation violations, and counsel was ineffective for allowing him to enter a stipulation to violation of probation relating to a new charge. His claims relate to the plea agreement he entered at the plea and revocation hearing. "[T]o demonstrate prejudice in the plea-bargaining process, 'a claimant must show the outcome of the plea process would have been different with competent advice.'" *Dempsey*, 860 N.W.2d at 869 (citation omitted). Nucaro has failed to prove the result of the plea process would have been different.

The record leaves no doubt Nucaro violated the terms of his probation. Nucaro was facing his second revocation hearing within six months, having failed to comply with any of the conditions imposed by the court at his first revocation hearing. He told the court he initially attempted to contact his probation officer, but then was "too busy" to continue communication attempts for placement in a residential facility. In addition to his continued violation of probation conditions, Nucaro had committed a new offense after the report of violation had been filed. Without the plea agreement, Nucaro faced trial on a felony-level vehicle offense and imposition of the entire eighteen year sentence previously suspended. Nucaro has presented no evidence any mitigating factors exist or that they would have resulted in a reduced sentence or the court not revoking his probation.

Based on the record before us, we cannot conclude that, even if counsel committed an error, it rose to the level of undermining our confidence in the resulting probation revocation and sentencing. *See id.* at 870–71. Nucaro has not

established the requisite prejudice.  We affirm the dismissal of Nucaro's PCR application.

**AFFIRMED.**