# IN THE COURT OF APPEALS OF IOWA

No. 20-0475
Filed March 3, 2021

**RONALD TAYLOR,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Buena Vista County, Don E. Courtney, Judge.

Ronald Taylor appeals the denial of his second and third applications for postconviction relief, arguing that the district court failed to address his claim of actual innocence and that counsel was ineffective. **AFFIRMED.**

Ashley Beisch of Johnson Law Office, PC, Ogden, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee State.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

Ronald Taylor entered *Alford* pleas[1] to two counts of lascivious acts with a child in 2012. He unsuccessfully sought postconviction relief (PCR) in 2015. *See Taylor v. State*, No. 15-1493, 2016 WL 4801657, at *4–5 (Iowa Ct. App. Sept. 14, 2016). He now appeals the denial of his second and third PCR applications. He contends the district court failed to address his claim of actual innocence under the standard in *Schmidt v. State*, 909 N.W.2d 778, 797 (Iowa 2018). He also alleges his attorney was ineffective (1) for not investigating the State's threat to file additional charges, (2) in failing to offer proof at the hearing on his motion in arrest of judgment, and (3) in failing to support his motion to withdraw his *Alford* pleas.

On the actual-innocence claim, we find the court *did* apply *Schmidt* and properly determined Taylor did not meet the standard. As for his challenges to counsel's performance, we find two of his three claims are barred under Iowa Code section 822.8 (2017) (prohibiting relitigation of "[a]ny ground finally adjudicated"). On the remaining claim—that counsel was ineffective for not offering evidence to bolster the motion to withdraw his pleas—Taylor fails to show that counsel breached an essential duty. We thus affirm the denial of relief.

---

[1] "An *Alford* plea is a variation of a guilty plea." *State v. Burgess*, 639 N.W.2d 564, 567 (Iowa 2001). But unlike the typical plea where the accused admits guilt, under the practice approved in *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), the accused may "voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *See State v. Hansen*, 221 N.W.2d 274, 276 (Iowa 1974).

## I. Facts and Prior Proceedings

Ten-year-old R.H. reported to her foster parents in 2011 that two years earlier, Taylor, a family friend, started sexually abusing her. She alleged the abuse continued until her tenth birthday. In particular, R.H. recounted Taylor initiating sexual contact in a loft above his garage, in his pick-up truck, and in a bedroom at his home. R.H. also revealed that Taylor created email accounts in her name so that they could communicate privately. After establishing a timeline, investigators verified many details of R.H.'s recollections.[2]

In November 2011, the State charged Taylor with four counts of second-degree sexual abuse, class "B" felonies, based on R.H.'s allegations. The matter proceeded to trial in March 2012. After jury selection but before presenting evidence, the State advised Taylor that if he went to trial, it intended to file charges involving other alleged victims. The State then offered Taylor a plea agreement. The State agreed to amend counts I and II to the lesser charges of lascivious acts with a child (class "C" felonies under Iowa Code section 709.8(1) (2011)), dismiss counts III and IV, refrain from filing charges involving other alleged victims, and dismiss a pending contempt charge. After conferencing with his attorney and his wife, Taylor signed the two *Alford* pleas. The court completed a colloquy and accepted his pleas to counts I and II as amended.

But Taylor soon had a change of heart. Just two weeks later, he moved to withdraw the *Alford* pleas. Before the court ruled on his motion to withdraw, Taylor

---

[2] For instance, R.H. told peace officers that Taylor licked her vagina in his "big, white pickup truck," and state records showed that he drove a white Dodge Ram 2500 at that time.

moved in arrest of judgment. At a hearing on his motion to withdraw, counsel said that Taylor did not have newly discovered evidence, but that he continued to claim his actual innocence. Counsel professed that Taylor felt "rushed" into accepting the *Alford* pleas when the State made a new offer after jury selection. The court denied the motion to withdraw.

At a second hearing in May 2012, Taylor testified in support of his motion in arrest of judgment. He said he accepted the plea offer because he was "scared" by the State's threat of additional charges. He also addressed an allegation from R.H.'s deposition that she once "struck [him] with such force that it knocked out one of [his] bottom teeth causing [him] to bleed." Taylor testified that R.H. could not be telling the truth because he wore dentures; his attorney offered a photograph showing Taylor's upper and lower plates. In that same testimony, Taylor discussed a lab report from the Iowa Division of Criminal Investigation that detected none of his DNA on carpet samples from the room where R.H. alleged that he had sexually assaulted her. The court denied his motion in arrest of judgment, finding Taylor entered his pleas voluntarily.

In July 2012, the court sentenced Taylor to concurrent terms of incarceration not to exceed ten years on each count. Taylor filed two direct appeals; both were dismissed on jurisdictional grounds. Taylor first applied for PCR in 2013, then amended his application in 2015. In August 2015, the court rejected claims that Taylor's counsel was ineffective for (1) failing to investigate circumstances that would show Taylor's innocence, (2) failing to ensure that Taylor's *Alford* pleas were knowing and voluntary, and (3) failing to present sufficient evidence in support of the motion to withdraw those pleas. In affirming

the district court, we found no breach of duty or prejudice on the first two claims. *Taylor*, 2016 WL 4801657, at *3–4. And we decided Taylor had not preserved the third claim for our review. *Id.* at *4. Procedendo issued in October 2016.

Eleven months later, in September 2017, Taylor filed a second PCR application, which included claims that physical evidence supported his innocence and that counsel failed to prepare adequately for trial. Then, in January 2018, Taylor filed a third PCR application, asserting the claim we found waived in the first PCR appeal—counsel's failure to offer proof in support of the motion to withdraw. After hearing argument, the court decided Taylor could not obtain a ruling on the waived claim from the earlier PCR because that case was closed. Taylor then moved to add a claim of actual innocence. In October 2018, the court consolidated all pending claims and motions into a single PCR action. Following the consolidation, Taylor filed numerous pro se motions.

In the end, the court permitted Taylor to pursue claims concerning the failure to support the motion to withdraw the *Alford* pleas (as a claim against his first postconviction counsel), the failure to investigate the threat of additional charges, and the actual-innocence claim. The court denied amendments based on counsel's handling of the motion in arrest of judgment and counsel's failure to investigate and prepare for trial. The court found that section 822.8 (2017) barred those two claims because they were previously adjudicated.

In a January 2019 ruling, the district court addressed Taylor's claim that he was factually innocent. The court started with the procedural history of actual innocence and the controlling case law:

Taylor asserts a claim of *actual innocence.* This is not a new claim as it was asserted on Taylor's original PCR #1. Taylor raises this claim again by amendment to PCR #2. The PCR statute of limitations does not bar freestanding *actual-innocence* claims. *Williams v. State*, No. 17-1195, 2018 WL 3471601, at *1 (Iowa Ct. App. July 18, 2018) (*citing Schmidt v. State*, 909 N.W.2d 778, 799–800 (Iowa 2018)); *see Mitchell v. State*, No. 18-0112, 2018 WL 4913670, at *2 (Iowa Ct. App. Oct. 10, 2018). Further, recent precedent under our supreme court's holding in *Allison v. State*, provides that freestanding claims of actual innocence under the Iowa Constitution [are] not barred by the three-year period of . . . Iowa Code [section] 822.3. 914 N.W.2d 866[,] 890 [(Iowa 2018)]. It was held that ineffective assistance of PCR counsel claims shall not be treated as an exception. *Mitchell*, No. 18-0112, 2018 WL 4913670, at *2 (*citing Dible v. State*, 557 N.W.2d 881, 886 (Iowa 1996)).

Next the court quoted key sections of the *Schmidt* analysis.

"The incarceration of actually innocent people . . . implicates procedural due process, therefore, an applicant claiming innocence will be successful if they can show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including newly discovered evidence." *Schmidt*, 909 N.W.2d at 794. Newly discovered evidence is evidence that was not available to the defendant within the three-year period following the date of his conviction and the defendant could not have discovered the evidence earlier than he did in the exercise of due diligence. *Id.* at 799.

"The Iowa Constitution gives a floor to bring freestanding claims of actual innocence under our postconviction-relief statute, specifically sections 822.2(1)(*a*) and (*d*)." *Id.* The Iowa State Constitution allows freestanding claims of actual innocence, so applicants may bring such claims to attack their pleas even though they entered their pleas knowingly and voluntarily. *Schmidt*, at 781.

The court then held a free-standing claim of actual innocence was available to Taylor under this new precedent: "In light of our supreme court's holding in *Schmidt*, the court finds it logical, then, that a defendant who has entered an *Alford* plea, effectually maintaining their claim of innocence, would naturally have access to the same justice-seeking mechanism as those who entered guilty pleas."

The court observed that Taylor's actual-innocence claim focused on two exhibits—his dental records and DNA testing for fluids on the seat of the truck he owned in 2010. The court noted that our decision in the first appeal rejected a claim of ineffective assistance of counsel based on the failure to secure that same evidence. *See Taylor*, 2016 WL 4801657, at *2. Because Taylor presented no new or additional evidence to support his claim of actual innocence, the court found he did not meet his burden.

The court decided the only remaining question was whether counsel failed to present sufficient proof to support Taylor's motion to withdraw the *Alford* pleas. In December 2019, the court heard evidence on that remaining claim. The court issued its order denying relief in February 2020. Taylor appeals from that order.

## II. Scope and Standards of Review

We normally review PCR rulings for correction of legal error. *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). But when a PCR action involves constitutional claims, such as ineffective assistance of counsel and due process right to claim actual innocence, we move to de novo review. *See id.*

## III. Analysis

### A. Actual Innocence

After our decision in Taylor's first PCR appeal, but before the district court rejected his second and third PCR applications, our supreme court recognized a constitutional right to bring a free-standing claim of actual innocence. *See Schmidt*, 909 N.W.2d at 795 (citing Iowa Const. art. 1, §§ 9 (due process), 17 (cruel and unusual punishment)); *see also Allison*, 914 N.W.2d at 890 ("A person

convicted of a crime seeking relief through asserting actual innocence carries a heavy burden, and such a claim is available to correct only the most egregious miscarriages of justice."). As explained in *Allison*, the *Schmidt* court adopted a challenging burden of proof intended to balance the rights of an applicant alleging actual innocence against the interest in the finality of convictions.

> For an applicant to succeed on a freestanding actual-innocence claim, the applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence . . . .

*Schmidt*, 909 N.W.2d at 797.

Taylor raised a separate actual-innocence claim in his first PCR, and again in the proceedings leading to this appeal. The court rejected the latter claim in the January 2019 order discussed above. Now Taylor contends the district court erred by not addressing the *Schmidt* test in its final order issued in February 2020.

The State disagrees with that contention, insisting the court did provide a final ruling on the actual-innocence claim. The State also points out that Taylor did not move to reconsider or enlarge the court's findings after the final PCR ruling in February 2020.[3]

The State has the better argument. The court expressly decided that *Schmidt* provided Taylor a potential avenue for relief. But potential did not ripen into proof. After assessing Taylor's "exculpatory" exhibits, the court determined he

---

[3] As its closing refrain, this order generally denied Taylor's PCR application, filed in September 2017. The State does not argue that Taylor had to file an interlocutory appeal from the January 2019 ruling to timely challenge the rejection of his actual-innocence claim.

did not meet the heavy burden to show that no reasonable fact finder could convict him of lascivious acts in light of all the evidence. *See id.* The court reached the correct result in its January 2019 order.

Contesting that result, Taylor reminds us that "since the inception of this case, [he] has maintained his innocence." He emphasizes that he never admitted guilt to the crimes charges, instead entering *Alford* pleas.

Yet the relationship between *Alford* pleas and a free-standing claim of actual innocence is more complicated than Taylor's argument would suggest. No doubt, Taylor's unwillingness to admit his participation in the lascivious acts removes some of the cognitive dissonance when he later tries to invalidate his guilty pleas. *See Schmidt*, 909 N.W.2d at 789 ("We know people plead guilty for all sorts of reasons.").

On the other hand, when entering his *Alford* pleas, Taylor acknowledged a probability that he would be convicted of lascivious acts based on the State's evidence as detailed in the minutes of testimony. That acknowledgement makes it difficult to argue now that no reasonable fact finder could convict him of those crimes. Indeed, a dissent in *Schmidt* foreshadowed the conundrum: "After today, does someone who made an *Alford* plea now get to raise an actual-innocence claim? That seems strange. After all, nothing has changed. Such a defendant always maintained he or she was innocent." *Id.* at 824 (Mansfield, J., dissenting).

On that point, Taylor stresses that he tried to "undo" his *Alford* pleas within two weeks of the district court accepting them. The problem is that Taylor did not premise his undoing attempt on the belief that the State could not prove its case. The defense did not, for example, have newly discovered evidence showing

Taylor's factual innocence. *See* Iowa Code § 822.2(1)(d). Rather, counsel said Taylor felt "rushed" into deciding to change his pleas after going through jury selection and receiving the threat of new charges from the prosecution.[4] But on the claim of actual innocence, Taylor's choice to enter *Alford* pleas does not advance his position.

Nor do the two exhibits that Taylor produced in the PCR proceedings. He claims he showed his innocence by offering his dental records and a DNA report. Taylor insists the dental records showing he wore dentures would impeach R.H.'s deposition testimony that she once struck him in the mouth and knocked out a tooth. Even assuming some level of contradiction in the child's recollection of that single encounter, Taylor fails to acknowledge the jury could still credit the child's allegations of abuse. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive.").

As for the lab report, it is true that technicians did not identify any seminal fluid or spermatozoa on any of the items tested, including carpet samples, fabric, and bedding.[5] But as the State argues, that result was unsurprising given that the testing took place months, if not years, after the alleged sex acts. And the defense had access to the lab report before Taylor entered his *Alford* pleas, yet still acknowledged the strength of the State's incriminating evidence. The lack of DNA

---

[4] We address Taylor's challenge to counsel's performance in the next issue.
[5] The lab report did not mention the truck seat. But Taylor testified that after his plea hearing, counsel had the seat tested and "that DNA came back negative."

evidence did not satisfy Taylor's high burden of showing factual innocence in his second PCR.

### B.      Ineffective Assistance of Counsel

In his second issue, Taylor contends his attorney in the criminal case performed below professional norms.   He identifies three omissions: (1) not exploring the additional charges promised by the State; (2) not providing evidence for the motion-in-arrest-of-judgment hearing; and (3) not offering proof to support his motion to withdraw his pleas.  The district court dismissed the first two claims as fully adjudicated in the first PCR action under Iowa Code section 822.8.  On appeal, Taylor does not show how he avoids that procedural default.  So we need not revisit those two claims.  Thus, the only live issue before us is counsel's failure to buttress the motion to withdraw Taylor's *Alford* pleas, a variation on the actual-innocence claim.

To prevail on his claim of ineffective assistance, Taylor must prove counsel breached a material duty and prejudice resulted from that breach.  *See Strickland v. Washington*, 466 U.S. 668, 696, 698 (1984).  On the prejudice prong, because Taylor entered a form of guilty pleas, he must show that but for counsel's alleged error, he would have insisted on going to trial.  *See Dempsey v. State*, 860 N.W.2d 860, 869 (Iowa 2015).

Where did counsel's performance fall short?  Taylor argues his attorney should have presented the lab report on DNA results and his dental records in support of his motion to withdraw.  But counsel testified in the PCR hearing that those exhibits were only relevant to a defense at trial.  They would not have

established a basis to withdraw his *Alford* pleas. We agree with counsel's assessment of the situation.

In considering Taylor's motion to withdraw his *Alford* pleas, the district court had to decide whether Taylor's acceptance of the State's offer was knowing and voluntary. *See State v. Speed*, 573 N.W.2d 594, 596 (Iowa 1998) (explaining court may refuse to allow withdrawal when the defendant enters plea with full knowledge of the charge against him, his rights and the consequences, and does so free of coercion). Counsel's argument at the hearing on the motion to withdraw was appropriate to that test.

The supreme court's decision in *Schmidt* to recognize a free-standing claim of actual innocence did not retroactively render counsel's performance inadequate. When he entered his *Alford* pleas, Taylor was aware of the evidence he now asserts establishes his innocence. He took the plea anyway. Counsel had no duty to trot out that evidence two weeks later at the hearing on Taylor's motion to withdraw. On this record, Taylor failed to show counsel's performance fell below professional norms.

**AFFIRMED.**