# IN THE COURT OF APPEALS OF IOWA

No. 22-0707
Filed July 26, 2023

**JOSHUA JARRETT,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Buchanan County, Laura Parrish,

Judge.

        Joshua Jarrett appeals the denial of his application for postconviction relief.

**AFFIRMED.**

        Benjamin Bergmann and Alexander Smith of Parrish, Kruidenier, Dunn,

Gentry, Brown, Bergmann & Messamer, L.L.P., for appellant.

        Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee State.

        Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

Joshua Jarrett appeals the district court's denial of his application for postconviction relief (PCR), contending his trial counsel was ineffective in failing to properly "impeach[] the testimony of the complaining witness." Upon our review, we affirm.

## I.   *Background Facts and Proceedings*

In 2016, a Buchanan County jury found Jarrett guilty of second-degree sexual abuse, third-degree sexual abuse, and flight to avoid prosecution. *See* Iowa Code §§ 709.1, 709.3(2), 709.4(2)(b), 719.4(4) (2014). In its decision on direct appeal, this court provided the following summary of the facts giving rise to Jarrett's conviction:

> H.K. was known to Jarrett through H.K.'s mother. H.K.'s father is deceased; he died when H.K. was six years old. According to H.K., Jarrett first made her manually stimulate him shortly after her father's death. H.K. did not tell her mother about this incident because Jarrett told her not to. On another occasion, when H.K. was eight years old, Jarrett made her perform oral sex on him. Again, H.K. did not disclose the abuse to her mother because Jarrett told H.K. not to and because she did not want her mother to be upset.
> The sex acts that Jarrett made H.K. perform eventually progressed from manual and oral stimulation to anal and vaginal intercourse. If H.K. resisted, Jarrett would "be terrible" to H.K.'s mother afterwards. Jarrett initiated sexual encounters with H.K. more frequently as she grew older. At trial, when asked how many times Jarrett had sexual contact with her, H.K. responded it was "way too many to count."
> When H.K. was in fifth grade she was provided a cell phone. Jarrett began to initiate sexual contact by sending H.K. text messages after her bedtime. H.K. testified about the content of the messages, stating they would say, "'Come meet me after your mom is asleep' or 'Come meet me in the living room' or 'Come meet me' wherever."
> According to H.K., one night, when she was fourteen, Jarrett sent her a text message after her bedtime to "[c]ome get me after your mother is asleep." H.K.'s mother saw H.K.'s phone light up when she received that message, and the mother grabbed the phone

from H.K.'s hand.  The mother read the text message, along with all of the other text messages from Jarrett to H.K. that told her to meet him after bedtime in various locations.  H.K.'s mother and H.K. had a conversation outside of Jarrett's presence; H.K. told her mother that "since the age of 6 . . . he would make [her] have vaginal, anal, and oral sex with him and that he would make [her] masturbate him." H.K. was crying throughout her disclosure, and her mother was also upset.  The mother confronted Jarrett.  No one reported the abuse. H.K.'s mother made sure Jarrett was not alone with H.K., and Jarrett had no further sexual contact with H.K. from that point on.

H.K. reported the sexual abuse to law enforcement in August 2014.  When Jarrett learned that the police were looking for him to investigate H.K.'s reports of sexual abuse, he fled from the state—to Kansas, North Carolina, Colorado, and finally Texas, where he was apprehended.

*State v. Jarrett*, No. 17-0091, 2018 WL 1099268, at *1–2 (Iowa Ct. App. Feb. 21, 2018).  On appeal, this court rejected Jarrett's various claims, including a challenge to the district court's denial of the admission of a video-recorded Child Protective Center (CPC) interview of H.K. in which she "denied any sexual abuse by Jarrett." *Id.* at *2.

Jarrett filed this PCR application in 2019, claiming his trial counsel was ineffective in failing to get the CPC interview into evidence or question H.K. about her prior inconsistent statements.  He filed a motion for summary disposition of his application, which the court denied.  Following a hearing, the PCR court entered a ruling denying Jarrett's application.  Jarrett appealed.

## II.    Standards of Review

"We ordinarily review PCR rulings for correction of errors at law. *. . .* But when the allegation is ineffective assistance [of] . . . counsel, we review de novo." *Brooks v. State*, 975 N.W.2d 444, 445 (Iowa Ct. App. 2022) (citations omitted).

### III.    *Discussion*

On appeal, Jarrett maintains his claim regarding trial counsel's alleged ineffectiveness in failing to impeach H.K. with regard to her statements in the CPC interview in which she denied sexual abuse by Jarrett. He also challenges the PCR court's denial of his motion for summary disposition on that claim. To prevail on a claim of ineffective assistance of counsel, Jarrett must show (1) counsel breached an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Additional facts relevant to resolution of Jarrett's claim include the following. As noted above, H.K. testified Jarrett began sexually abusing her when she was six years old and the abuse continued until she was between thirteen and fourteen years old. The summer before H.K.'s freshman year, Jarrett's daughter S. moved in with H.K.'s family. H.K. told S. about the abuse by Jarrett, and S. responded that Jarrett "had done it to her, too." S. eventually disclosed the abuse, and the Department of Human Services (DHS) became involved with the family. As part of the DHS investigation, the CPC scheduled an interview of H.K. On the drive to the interview, H.K.'s mother "told [H.K.] to lie and say that it didn't happen to [her] and say that [she] didn't think it happened to [S.]" either. H.K.'s mother told H.K. that if she "didn't lie," then the kids would be "taken away" by DHS. And the mother "said if [H.K.] did [lie], then she would let [H.K.] decide if [Jarrett] stayed or [left the family home]." H.K. "was scared" and agreed that she "would lie." Thereafter, during the interview, when H.K. was asked "if anything had happened, [she] said no." On the drive home, the mother asked H.K. if she had lied; H.K. "said yes." H.K. then "waited for her to ask . . . if [Jarrett] was going to stay or go," but "she

never did, and he came home." Subsequently, H.K. reported Jarrett's abuse to law enforcement.

H.K. later "testified at Jarrett's trial during the State's case-in-chief and described the years of sexual abuse by Jarrett." *Jarrett*, 2018 WL 1099268, at *2. But trial counsel "did not attempt to offer or cross-examine H.K. about her video-recorded CPC interview in which she had denied the abuse by Jarrett." *Id.* at *3. At the PCR hearing, trial counsel[1] stated he believed "the fact that the jury never learned that H.K. had previously denied the abuse prejudiced" Jarrett.

On appeal, Jarrett contends the CPC interview was admissible under a number of evidentiary rules, including Iowa Code section 915.38(3) and Iowa Rules of Evidence 5.613, 5.703, and 5.104. He further argues "[t]he failure to get the CPC video into evidence was not a strategic decision" because "[g]etting the denial in would have complemented counsel's strategy." We noted on direct appeal, "Since H.K. testified at trial, the [CPC interview] was admissible for impeachment as a prior inconsistent statement." *Id.* at *4. For purposes of evaluating Jarrett's claim, we will assume without deciding that he could meet the procedural requirements of rule 5.613 and that the recorded statement could have complemented trial counsel's strategy of challenging H.K.'s credibility.

But Jarrett also must be able to establish the prejudice prong of his ineffective-assistance claim to be successful. *See State v. Haas*, 930 N.W.2d 699, 703 (Iowa 2019); *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) ("The court

---

[1] During his criminal trial, Jarrett was represented by Clemens Erdahl and his co-counsel Eric Tindal. Erdahl passed away in 2019, before Jarrett took depositions in this PCR action. Accordingly, our references to trial counsel's statements or testimony are with regard to Tindal.

always has the option to decide the claim on the prejudice prong of the *Strickland* test, without deciding whether the attorney performed deficiently." (quoting *State v. Clay*, 824 N.W.2d 488, 501 n.2 (Iowa 2012))). In other words, Jarrett had to establish "a reasonable probability . . . the result of the proceeding would have been different" if trial counsel had elicited evidence regarding H.K's statements during the CPC interview. *See id.* On this issue, Jarrett claims placing H.K.'s credibility in question "would have put this case into an entirely new light," "with an impeached witness that the jury had to believe beyond a reasonable doubt."

> The PCR court was not persuaded, finding:

> [E]ven if questions had been asked of H.K. regarding her prior denial, the explanation for the denial was persuasive—that H.K.'s mother had told her to lie in order to avoid removal of the children in the home. Bringing that evidence before the jury would perhaps have only cemented the jury's belief that H.K. was more credible than her mother at the time of trial. There is no guarantee, or even probable likelihood on these facts, that the prior denial would have strengthened Jarrett's denials.
> . . . . Even if counsel's failure to get the videotaped CPC testimony before the jury, or their failure to conduct a different cross-examination of H.K. was determined to be ineffective, it was not prejudicial, and therefore, Jarrett's claim must fail.

Indeed, at the PCR hearing, trial counsel acknowledged that if H.K.'s inconsistent statements had been raised, H.K. "would then claim that her mother put her under duress," which "was an issue" for the defense. The jury had other reason to question H.K.'s mother's credibility as well. For instance, when police spoke to her about H.K.'s allegations of abuse against Jarrett, she called Jarrett and told him "he probably needed to get home" because H.K. had reported the abuse and the police were involved. And as this court previously noted:

> At trial, H.K.'s mother denied that H.K. had disclosed the sexual abuse when she caught Jarrett sending her the text message.

Even so, she acknowledged that after that incident, she did not allow Jarrett and H.K. to be alone together. Jarrett did not deny that he sent the text messages to H.K. and also did not deny that H.K.'s mother confronted him about it, but he claimed he told her "it was nothing" and she should "just let it go."

*Jarrett*, 2018 WL 1099268, at *2. The PCR court reiterated additional evidence corroborating H.K.'s testimony as follows:

In addition to the testimony of H.K., the jury in this case had other corroborating evidence to consider in reaching a guilty verdict: (1) the text message from Jarrett to H.K. was acknowledged by H.K.'s mother and Jarrett—without a reasonable explanation as to what it could have meant, other than exactly what H.K. said it meant—that she was supposed to get him for sexual contact after her mother was asleep and wouldn't be aware; (2) H.K.'s mother's decision to prevent H.K. from being alone with Jarrett after seeing the text message; [and] (3) Jarrett's response to the accusation was to abscond to Texas in an attempt to avoid contact with law enforcement.

Upon our review, we agree Jarrett has failed to establish a reasonable probability, in light of all the evidence, that had H.K.'s testimony been impeached, the outcome would have been different. *See Everett v. State*, 789 N.W.2d 151, 160 (Iowa 2010). In other words, he has not shown "the possibility that this evidence would have impugned [H.K.'s] credibility is sufficient to undermine confidence in the outcome." *Cf. Millam v. State*, 745 N.W.2d 719, 724 (Iowa 2008) (internal quotation marks omitted).

Accordingly, we affirm the court's denial of Jarrett's motion for summary disposition on this claim and the denial of his PCR application.

**AFFIRMED.**