# IN THE COURT OF APPEALS OF IOWA

No. 23-0241
Filed December 18, 2024

**BRIAN SCOTT KETELSEN,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Linn County, David F. Staudt, Judge.


An applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**


Mark C. Meyer, Iowa City, for appellant.

Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.


Considered by Greer, P.J., Langholz, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**DANILSON, Senior Judge.**

In 1993, Brian Ketelsen shot and killed Gregory Scott Goodyear during a scuffle outside of a tavern.  Ketelsen claimed he had pulled out his gun in self-defense after Goodyear attacked his friend and then turned toward him; he claimed Goodyear kicked him in the chest causing him to accidentally discharge the weapon and shoot Goodyear.  A jury did not buy Ketelsen's story and convicted him of first-degree murder in 1994.  Ketelsen was unsuccessful in his direct appeal, and he filed an application for postconviction relief (PCR) in 1997.  After more than two decades of motion practice, the PCR court held a trial on the matter in January 2022 and issued a ruling denying Ketelsen's application a year later.  Ketelsen filed a motion to reconsider, which the PCR court denied.  Ketelsen appeals, claiming his trial counsel was ineffective in a number of respects, some of which resulted in structural error; juror misconduct; and that the PCR court incorrectly denied his claims based on his lack of credibility when his claims are not solely dependent on his credibility.  We affirm.

## I.      *Ineffective Assistance*

We begin by addressing Ketelsen's claim that he received ineffective assistance of trial counsel.  We typically review PCR rulings for legal error.  *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021).  However, because ineffective-assistance claims are of a constitutional dimension, our review of these claims is de novo.  *Id.*  To establish a claim of ineffective assistance, an applicant must establish (1) that counsel breached an essential duty by a preponderance of the evidence and (2) that prejudice resulted.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  With respect to the first element, we presume counsel

performed competently. *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015). Counsel's performance is measured against "the standard of a reasonably competent practitioner." *Id.* (citation omitted). "We assess counsel's performance objectively by determining whether it was reasonable, under prevailing professional norms, considering all the circumstances." *Id.* (cleaned up). With respect to the second element, an applicant must show that prejudice resulted from counsel's failure to perform an essential duty. *See id.* To do so, the applicant "need only show that the probability of a different result is sufficient to undermine confidence in the outcome." *State v. Clay*, 824 N.W.2d 488, 496 (Iowa 2012) (quoting *State v. Maxwell*, 743 N.W.2d 185, 196 (Iowa 2008)). However, if an applicant cannot establish either element, then we may affirm the district court without considering the other element. *See Anfinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008).

Ketelsen contends that trial counsel failed to adequately investigate the facts of his case and present an effective defense. He complains that counsel advanced the theory that Ketelsen accidentally shot Goodyear during opening arguments but then requested a jury instruction on self-defense. Ketelsen contends these two claims, that the shooting was accidental or done in self-defense, are contradictory and "indicates that counsel had not developed a consistent theory of defense." We disagree and think the presentation of multiple theories of the case was done to provide the jury with multiple plausible alternative theories contrary to the State's theory.

Ketelsen also claims that trial counsel failed to adequately prepare for trial by not retaining a ballistics expert to support his claim that the shooting was

accidental. But defense counsel explained in a deposition that they[1] "didn't see any issue where an expert would necessarily benefit" the case. So, counsel considered retaining experts but thought it would not help the case. While we generally do not second-guess trial counsel's strategic decisions, *see Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) ("[W]e avoid second-guessing and hindsight."), we agree with trial counsel that a ballistics expert would not have been particularly helpful to Ketelsen in this case. The expert retained in this PCR proceeding completed a forensic analysis and reconstruction of the shooting that determined Ketelsen's version of events, that he accidentally pulled the trigger as he was kicked, was not "forensically supported."[2] Moreover, when deposed, the expert explained,

> Typically with an unintended discharge, it's a very rare case that you can diagnos[e] that it's likely that it did occur simply because there's no forensic difference in—a gun behaves the same way whether you intended to pull the trigger or you didn't intend to pull the trigger. It becomes what was going on in the person's mind, what was their intent.

As a ballistic expert would not be able to provide meaningful insight on whether Ketelsen accidentally discharged the gun, counsel was not ineffective for deciding against retaining such an expert.

Next, Ketelsen complains about defense counsel's failure to consult an expert about the various drugs and alcohol in Goodyear's system at the time of the

---

[1] Ketelsen was represented by two defense attorneys at his criminal trial.

[2] The analysis concluded, "A kick in the chest by Goodyear, biomechanically, would move Goodyear forward and Ketelsen back (opposite directions). This action is in conflict with the wound dynamics and is not forensically supported."

The analysis did support a conclusion that Goodyear was shot in the chest *after* Goodyear kicked Ketelsen in the chest "when a likely recover position of both individuals is considered and aligned with the wound path."

shooting. Specifically, he complains that counsel should have retained an expert to testify that cocaine, which was in Goodyear's system, was a stimulant rather than a nervous-system depressant after a State expert testified to the opposite. Ketelsen contends this testimony would have established that Goodyear was the initial aggressor. But the record was already replete with evidence that Goodyear was drunk, high on cocaine, and the initial aggressor. Even assuming counsel should have called an expert to clarify that cocaine is a stimulant, no prejudice resulted.

Moving on, Ketelsen contends counsel was ineffective for failing "to impeach key witnesses whose testimony at trial was at variance with statements they made to the police when first questioned, or later when they were deposed." He claims witnesses changed their recollection of the shooting, specifically when Goodyear stepped back from Ketelsen. But the State points out that the witnesses' prior statements were silent on when Goodyear stepped back, so they were not contradictory when they added the detail of when Goodyear stepped back (before Ketelsen shot him) at trial.

Ketelsen also complains that counsel should have impeached a witness who initially reported that Goodyear "kicked" Ketelsen but then testified in the affirmative when asked, ". . . then [Gregory] Scott Goodyear reached and kicked out, and then it was the second shot that was fired into his chest?" He claims this suggests that Goodyear never made contact with him. But that same witness provided additional testimony that Goodyear kicked Ketelsen, consistent with his prior statement.

Ketelsen next complains about a witness's testimony changing to suggest that Ketelsen's friend was the initial aggressor rather than Goodyear. He also complains that counsel never exploited two witnesses' inability to later identify him as the shooter, contending doing so would demonstrate how poor a vantage point they had when they witnessed the shooting. But the big problem with Ketelsen's complaints is that even if counsel had performed as he wished and went after the credibility of these witnesses, we do not believe it would have had any impact on the outcome of the proceedings. None of these differences would have meaningfully bolstered Ketelsen's claim that the shooting was accidental.

Next, Ketelsen claims that the counsel was ineffective for failing to object to or seek an amendment to jury instruction twenty-one, which stated:

> If a person has the opportunity to deliberate and uses a dangerous weapon against another resulting in death, you may, but are not required to, infer that the weapon was used with malice, premeditation and specific intent to kill.
> Malice aforethought may be inferred from the defendant's use of a dangerous weapon.

Ketelsen claims defense counsel should have anticipated the supreme court's opinion in *State v. Green*, 896 N.W.2d 770, 780 (Iowa 2017), and argued that instruction twenty-one was not appropriate because he claimed the shooting was accidental. Ketelsen misreads *Green*. The instruction is not improper simply because Ketelsen claimed the shooting was accidental, particularly because the State presented evidence that his conduct was intentional. *See Green*, 896 N.W.2d at 781 ("The instructions on malice aforethought and a dangerous weapon accurately stated the law, and there was substantial evidence presented at trial to support them."). The instruction simply permitted the jury to infer malice,

premeditation, and specific intent; it did not require the jury to make such an inference. *See id.* As the instruction correctly stated the law, counsel had no duty to object to it.

## II. Structural Error

Ketelsen claims that counsel was deficient to such an extent during closing arguments that it resulted in structural error. "Structural errors are not merely errors in a legal proceeding, but errors 'affecting the framework within which the trial proceeds.'" *Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)).

> We have recognized structural error occurs when: (1) counsel is completely denied, actually or constructively, at a crucial stage of the proceeding; (2) where counsel does not place the prosecution's case against meaningful adversarial testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, such as where counsel has an actual conflict of interest in jointly representing multiple defendants.

*Id.* In these instances, no demonstration of prejudice is required because the judicial proceeding itself is presumed unreliable due to the structural error. *Id.*

Ketelsen claims structural error resulted from trial counsel's failure to ensure that closing arguments were reported and then "by inviting the jury to find [him] guilty of murder in the second degree" during closing arguments. Ketelsen points to nothing that required closing arguments to be recorded at the time of trial in 1993. Moreover, he provides nothing other than his own testimony to claim that defense counsel invited the jury to find him guilty of second-degree murder during closing arguments. The PCR court found Ketelsen's credibility to be suspect; we defer to that credibility finding. *See Ledezma*, 626 N.W.2d at 141. And we think it is more likely that defense counsel attempted to argue that there was no proof of

premeditation so the jury should, at the very most, consider second-degree murder and then went on to argue down each lesser-included offense. This closing argument strategy is common in first-degree murder cases to turn the jury's attention away from the first-degree charge and then work through the weaknesses of each lesser-included offense to show that the defendant should be found not guilty. We are not convinced of Ketelsen's claim that trial counsel argued for his conviction of second-degree murder, and thus, Ketelsen cannot establish structural error.

### III.    Juror Misconduct

Ketelsen contends that juror misconduct denied him a fair trial as guaranteed under the state and federal constitutions. He points to statements from a juror about the jury only being provided one set of instructions and the jury not reading the instructions as a whole and that another juror speculated about how much prison time Ketelsen would serve if convicted of second-degree murder.

With respect to his claim regarding the limited copies of the jury instructions provided to the jury and that the jury did not read the instructions as a whole, Ketelsen is not entitled to relief as his complaint relates to the internal workings of the jury deliberation room, which we will not question.[3] *See State v. Christensen*,

---

[3] We also note that that Ketelsen does not explain why he did not raise his claim regarding the number of copies of the jury instructions or the jury's failure to read the instructions as a whole in his direct appeal as it does not appear that he is claiming appellate counsel was ineffective for not raising the claim. So, we are doubtful of his ability to raise the claim now. *See Osborn v. State*, 573 N.W.2d 917, 921 (Iowa 1998) (recognizing that PCR actions are "not a means for relitigating claims that were or should have been properly presented" in a prior action absent a showing of sufficient reason as to why the claim was not previously presented and resulting prejudice); *see also* Iowa Code § 822.8 (1997).

929 N.W.2d 646, 666 (Iowa 2019) (recognizing we may not question the deliberative process unless there is evidence of extraneous influences on the deliberations).

With respect to the juror's speculation about how much prison time Ketelsen would serve if convicted of second-degree murder, this court already squarely addressed that claim of juror misconduct in Ketelsen's direct appeal. *See State v. Ketelsen*, No. 5-529/94-1292, at *16–17 (Iowa Ct. App. Dec. 22, 1995).[4] As such, this claim cannot serve as a ground for PCR.[5] *See* Iowa Code § 822.8 (prohibiting a PCR applicant from raising a claim previously finally adjudicated in a prior proceeding). Moreover, we caution that if this alleged comment by a juror is misconduct, it would lead us down an unending road to review all comments made by fellow jurors. Doing so would invade the jury's privacy, which "is essential to public confidence in the verdict," and frustrate our interest in achieving finality in each proceeding. *See Christensen*, 929 N.W.2d at 666.

## IV. *Fundamental Premise*

Finally, Ketelsen contends that the PCR court's conclusions were based on the fundamental premise that he was not credible without consideration of other evidence he presented. He argues that reports from his expert witnesses stand

---

[4] This opinion is not available on Westlaw.

[5] To the extent Ketelsen argues that the discussion of *Remmer v. United States*, 347 U.S. 227 (1954), in *Christensen*, 929 N.W.2d at 678, "set forth a new rule of law" that requires retroactive application despite our prior ruling on direct appeal, he is mistaken. *Christensen* did not create a new rule of law, and its discussion of what party bears the burden of proof is only relevant when determining whether extraneous information known by the jury resulted in prejudice. 929 N.W.2d at 678. So, it is not applicable here where the claim relates to a statement made by a juror speculating on potential sentences.

on their own and entitle him to relief. But those reports did not draw any definitive conclusions that would warrant relief. And some of his claims, like his structural error claim, relied only on his testimony, which the PCR court was free to find not credible. Some of his ineffective-assistance claims failed because he could not establish *Strickland* prejudice and had nothing to do with his credibility. In short, the PCR court's conclusions were not based on a faulty fundamental premise.

## V.    *Conclusion*

Ketelsen cannot establish any claims of ineffective assistance of counsel, nor can he establish structural error. His juror misconduct claims fail as he does not allege any extraneous influence on the jury. And the PCR court's conclusions were not based on a faulty fundamental premise. We have given due consideration to all Ketelsen's appellate arguments, including those not specifically discussed herein, and find them to be without merit. We affirm the PCR court's denial of relief.

**AFFIRMED.**