# IN THE COURT OF APPEALS OF IOWA

No. 23-1506
Filed March 19, 2025

**DAVID MOSES WELTMAN,**
　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　Respondent-Appellee.
_____

　　　Appeal from the Iowa District Court for Johnson County, Paul D. Miller,

Judge.


　　　A postconviction-relief applicant appeals the denial of his application.
**AFFIRMED.**


　　　Gary Dickey of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for

appellant.

　　　Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney

General, for appellee State.


　　　Considered by Greer, P.J., and Ahlers and Badding, JJ.

**AHLERS, Judge.**

David Weltman applied for postconviction relief (PCR) following his conviction for second-degree sexual abuse. He contends his trial counsel in his criminal case provided ineffective assistance. The PCR court denied Weltman's application in its entirety. Weltman appeals.

## I. Background Facts and Prior Proceedings

After a jury convicted Weltman of second-degree sexual abuse, he appealed. This court summarized the facts that gave rise to Weltman's conviction as follows:

> A reasonable juror could have found the following facts. Weltman taught Hebrew lessons at a Jewish center in Iowa City, Iowa. A nine-year-old boy and his friend were enrolled in a class with Weltman. The boy testified that Weltman "did something bad to" him. Weltman often played a "placement" game with the children, in which Weltman "would usually pick [the children] up and put [them] somewhere, and then the other one would say where [they] were." One day, the boy was in Weltman's office when Weltman "picked [him] up, upside down and took [him] into the storage room and put his hands under [his] underwear and touched [his] penis." The boy was wearing sweat pants over his underwear. The prosecutor asked the boy, "Is there any doubt in your mind that [Weltman's] hand touched your penis that day?" The boy responded, "No." The boy did not immediately tell anyone about the episode because he "thought it was an accident."
>
> The boy's mother testified that, although she went to the Jewish center with her son, she was not able to observe the boy "during the actual lesson because they would be in [Weltman's] office or the library." As time passed, she became friends with Weltman. On one occasion, she mentioned her plan to take her daughter to Israel over spring break as a gift for her Bat Mitzvah. Weltman "immediately replied that was coincidental, that he was also going to Israel for spring break." Some months later, Weltman suggested, "[W]ouldn't it be a good idea to bring [her son] on the trip, too, that he would get a lot out of it, and since [Weltman] was already teaching and mentoring him he could continue that in Israel." Later, Weltman mentioned his "offer [was] still on the table." The mother changed her plans to include her son. She informed Weltman, who helped

her buy airline tickets for the boy and "came up with a pretty detailed itinerary that involved" all of them flying together on the same flights.

Many of the mother's communications with Weltman were documented in text messages. In one early message, before it was decided the boy would accompany his mother and sister, Weltman stated, "[I]n case bringing [the boy] is still something you're interested in, I have a draft itinerary for you for him (and all of us, when intersecting)." In another, he said, "I'm editing the itinerary online and I'll reshare once it's completed." In yet another, the mother shared that the boy was "very excited" to come on the trip "but also somewhat nervous about being separated from" her.

Weltman's carve-out of separate time with the boy hit a roadblock when, "on two occasions by phone [Weltman] invited [the boy] to come sleep over alone in his apartment so that he could feel more comfortable being away from [his mother] in preparation for travel in Israel." The mother refused to allow these overnight visits. She also informed Weltman that portions of his planned itinerary had to be changed so the boy "would always stay with" her. Weltman "was irritated" with this turn of events. The lodging was adjusted so that the boy would always be sleeping in his mother's room.

Weltman circumvented the change in one of the cities they visited. He told the mother "no one family could host all [of them], so he found one family to host [mother and daughter] and another family to host [Weltman and the boy]." The boy was not comfortable with the prospect of staying with Weltman, but he did. That night, Weltman told him to take off his clothes and take a shower. The boy did so. Weltman entered the bathroom while he was showering and looked at him. The incident made the boy feel uncomfortable. The boy later found out there was room for them at the other house.

After that night, the boy had "a full-on frantic panic attack" when he learned the next accommodation had two twin beds in two rooms. The mother moved one of the beds from Weltman's room to her room so the boy could stay with her.

While on the trip, Weltman played a game with the boy and his sister in which Weltman "was using [the boy] as a shield." Weltman "put [the boy] on his lap and he wouldn't let [him] go." The boy "didn't like it" and tried "to get off his lap." The boy stated he had been on Weltman's lap in the past, during Hebrew lessons.

On returning to Iowa City, the boy told his mother what transpired at the Jewish center. The prosecutor asked the boy, "[W]hat changed in your mind to make you want to tell your mom what had happened during the Hebrew lessons?" The boy responded, "The things that happened in Israel." The prosecutor continued, "And did that make you feel like it wasn't an accident?" The boy answered, "Yeah."

*State v. Weltman*, No. 20-0860, 2021 WL 2768910, at *2–3 (Iowa Ct. App. June 30, 2021) (alterations in original). We affirmed Weltman's conviction. *Id.* at *8.

Weltman then filed this PCR action claiming his trial counsel provided him with ineffective assistance in a number of respects. Specifically, Weltman claimed counsel was ineffective for failing to (1) consult with or call an expert witness to rebut the State's expert witness, (2) object to the prosecutor's improper comments on the credibility of witnesses in closing argument, (3) obtain and introduce relevant emails and text messages concerning planning for the Israel trip to counter the mother's testimony, (4) request a limiting instruction on the other-acts evidence concerning events in Israel, and (5) object to the State's mid-trial amendment to the trial information to expand the date range for the offense.

Prior to the PCR trial, Weltman subpoenaed the mother's phone records for all her text messages with him. The local police department was to extract the text messages. However, that had not been completed by the time of the PCR trial. So at the conclusion of the trial, the PCR court said it was "going to leave the record open for those." Weltman also informed the court that he had emails that had been referenced throughout the PCR trial, but he had not received them until after the discovery deadline. Weltman indicated he would like to offer the emails as an exhibit. The State said it would not object to their admission so long as PCR counsel included page numbers in the exhibit, and PCR counsel agreed. The PCR court agreed the exhibit would be admitted once PCR counsel filed the exhibit.

Following the PCR trial—at which Weltman's trial counsel, a psychologist specializing in allegations of child sexual abuse, the boy's mother, and Weltman testified—the PCR court denied Weltman's application in a thorough written ruling.

With respect to the text messages the police department provided after trial and Weltman's email exhibit offered at the end of trial, the PCR court did not admit the exhibits. However, the PCR court explained that even if it had considered those exhibits, it still would not grant Weltman any relief and detailed that alternative analysis.

Weltman appeals. He challenges the PCR court's denial of the ineffective-assistance-of-counsel claims raised in his application. He also argues that the cumulative prejudice of his trial counsel's errors undermines the confidence in his conviction and that the PCR court erred by refusing to admit the email and text-message exhibits that he offered and to which the State did not object.

## II.     Evidentiary Challenge

As a preliminary matter, we address the evidentiary issue regarding the email and text-message exhibits. We typically review "[d]istrict court decisions on whether to admit or exclude evidence . . . for an abuse of discretion." *State v. Dessinger*, 958 N.W.2d 590, 597 (Iowa 2021). A district court abuses its discretion when its decision to admit or deny evidence is "clearly untenable or clearly unreasonable." *State v. Donahue*, 957 N.W.2d 1, 6 (Iowa 2021) (citation omitted).

Here, the PCR court refused to admit the exhibits because Weltman had been given the opportunity to continue the PCR trial to a later date when all the text messages would have been available to offer as an exhibit, but Weltman wanted to proceed with the trial as scheduled. The court also cited "the State's request for the court to not consider the late produced emails." But the record reflects the contrary. The State was amenable to leaving the record open so the text messages could be admitted and agreed it did not object to admission of the

emails so long as the pages of the exhibit were numbered. With respect to the emails, the court even stated, "when you do e-file them, [the exhibit] will be admitted."

Given the fact that the court erroneously believed it was acting on the State's request not to consider the evidence, when in fact the State made no such request, we conclude that its refusal to admit the evidence on this erroneous belief amounted to an abuse of discretion. However, because the PCR court provided an alternative analysis wherein it considered the exhibits, no reversal or remand on this issue is necessary.

## III. Ineffective Assistance

We move on to the core of Weltman's claim—that his trial counsel provided him with ineffective assistance. Because ineffective-assistance-of-counsel claims raise a constitutional issue, our review is de novo. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). With de novo review, we give weight to the district court's fact findings, especially relating to witness credibility, but we are not bound by them. *Id.*

To establish an ineffective-assistance-of-counsel claim, an applicant must (1) establish by a preponderance of the evidence that counsel failed to perform an essential duty and (2) that the failure resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the first element, we presume counsel performed competently. *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015). Counsel's performance is measured against "the standard of a reasonably competent practitioner." *Id.* (citation omitted). "We assess counsel's performance objectively by determining whether it was reasonable, under

prevailing professional norms, considering all the circumstances." *Id.* (cleaned up). In so doing, "[w]e will not second-guess reasonable trial strategy." *Fullenwider v. State*, 674 N.W.2d 73, 75 (Iowa 2004). With respect to the second element, an applicant must show that prejudice resulted from counsel's failure to perform an essential duty. *See id.* To do so, the applicant "need only show that the probability of a different result is sufficient to undermine confidence in the outcome." *State v. Clay*, 824 N.W.2d 488, 496 (Iowa 2012) (quoting *State v. Maxwell*, 743 N.W.2d 185, 196 (Iowa 2008)). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (citation omitted).

### A. Grooming Expert

Weltman's first claim is that his trial counsel was ineffective for not consulting with or calling to testify an expert on the grooming of sexual-abuse victims to rebut the State's expert who testified on that topic at the criminal trial. Weltman points to the PCR testimony of an expert he found who explained that grooming has no universal definition and criticized the State's trial witness's testimony on the subject. But on our review, we do not conclude this is the type of case that necessarily required trial counsel to consult with an expert.

Trial counsel explained that he took it upon himself to research legal and scientific materials discussing grooming. And there was a time issue as well. Defense counsel only became aware that the State intended to call an expert to testify about grooming about two months before trial. Weltman's counsel was hesitant to consult with an expert because experts tend to be busy and it can be difficult to schedule meetings or trial testimony with them. Nevertheless, defense

counsel discussed the option of hiring such an expert with Weltman. Weltman was firm in his position that he wanted to get the trial over with and did not want a continuance. So, Weltman decided not to hire an expert because doing so could have delayed or postponed the proceedings.

Now, Weltman complains that retaining and preparing an expert does not necessarily take as long a time as defense counsel presumed and counsel was ineffective for making such an assumption. He cites testimony from his expert from the PCR trial, who said that sometimes he can prepare for a trial in two weeks or less. But even his expert explained that his availability and the speed with which he works differ depending on his schedule at any given time. He noted that sometimes attorneys seek out his expertise, but he can't get to their case in time unless they take steps to delay the proceedings. This testimony supports defense counsel's concern that retaining an expert to consult or testify could have delayed the proceedings—a delay Weltman strongly opposed.

Defense counsel did not breach an essential duty when he discussed the possibility of retaining an expert to counter the State's expert with Weltman while also warning him that it could delay the proceedings. In doing so, defense counsel was transparent with Weltman, as counsel should be. We credit defense counsel's testimony that Weltman did not want to risk delaying the proceedings and decided against pursuing a defense expert.

Moreover, we note that defense counsel pivoted to other reasonable strategies to combat the State's expert witness. First, he filed a motion in limine to try to prevent the expert from testifying at all. When that was unsuccessful, defense counsel effectively cross-examined the State's expert at trial by pointing

out the inherent faults of sifting through past behavior to try to identify grooming due to hindsight bias.

Following our de novo review, we agree with the PCR court that Weltman's trial counsel did not breach an essential duty when he did not retain or consult with an expert regarding grooming.

## B.     Prosecutor's "Vouching Statements"

Next, Weltman contends the prosecutor made impermissible vouching statements during closing arguments that amounted to prosecutorial misconduct, and defense counsel was ineffective for not objecting.[1]

Prosecutors have "some latitude during closing argument in analyzing the evidence admitted in the trial" and "may argue the reasonable inferences and conclusions to be drawn from the evidence" so long as the prosecutor does not express any personal beliefs. *State v. Graves*, 668 N.W.2d 860, 874 (Iowa 2003) (citation omitted). "An argument amounts to impermissible vouching if the jury could reasonably believe the prosecutor was expressing a personal belief in the credibility of a witness, either through explicit personal assurances or implicit indications that information not presented to the jury supports the witness." *State v. Martens*, 521 N.W.2d 768, 772 (Iowa Ct. App. 1994). A prosecutor's actions amount to misconduct when the prosecutor "acted with reckless disregard" of the

---

[1] On direct appeal, a majority of a panel of this court rejected Weltman's claim that one statement made by the prosecutor during closing arguments amounted to impermissible vouching that was prosecutorial misconduct. *Weltman*, 2021 WL 2768910, *6–7. One member of the three-judge panel specially concurred and viewed the statement as vouching but concluded that Weltman's right to a fair trial was not prejudiced by that single statement. *Id.* at *8–9 (Schumacher, J., concurring specially).

duty to ensure a fair trial or when the prosecutor "intentionally made statements in violation of an obvious obligation, legal standard, or applicable rule that went beyond an exercise of poor judgment." *State v. Coleman*, 907 N.W.2d 124, 139 (Iowa 2018).

With this in mind, we review the prosecutor's statements from closing arguments that Weltman contends counsel should have objected to as impermissible vouching amounting to prosecutorial misconduct.

- The bottom line is he touched this child's penis.  Was it an accident?  No.  Did it happen?  Yes.  And was it sexual in nature?  Absolutely.
- In any of that was there any inconsistent statements [the boy] made?  Did he change his story?  Did he embellish it at all?  No.
- They have absolutely no motive to come in here and tell you what they saw and heard, what they experienced of [the boy], what they felt was happening to him, which then led to what actually did happen to him.  None of that.
- Ladies and gentlemen, your duty is that you decide the facts from the evidence.  It is your sole duty to seek the truth and do justice.  [The boy] didn't lie to you.  This happened.
- Ladies and gentlemen, you have all the evidence you need, and the State would ask you to do justice for [the boy], believe [him], and find the defendant guilty of sexual abuse in the second degree.  Thank you.
- [The State's grooming expert] also explained in his testimony what often happens with children, it's the effect of the trauma that shows up first, it's the child's reaction to that.  It's that instinct in that child's body that says—and how does that show up? Anxiety.  What did he say?  Hypervigilance was the word, hypervigilance to touch, hypervigilance to that person.
    And as the judge told you, obviously, our—my closing argument isn't evidence.  You remember or recall the testimony of [the grooming expert], that is what I recall the term that he had used, but please rely on your own memory of that.  But that hypervigilance is exactly what was happening.[2]

---

[2] Weltman's appellate brief also identifies additional statements he views as impermissible vouching.  However, these additional statements were not addressed by the PCR court in its ruling on Weltman's application.  So, error is not preserved with respect to these additional statements.

Considering these statements within the broader context of the prosecutor's closing argument, the prosecutor was not impermissibly vouching and thus not committing prosecutorial misconduct. *See Graves*, 668 N.W.2d at 874 (noting a prosecutor cannot express personal beliefs in closing argument by vouching personally about a defendant's guilt or a witness's credibility). Rather, the prosecutor was making evidence-based arguments to the jury, which is permissible. *See id.* (noting "a prosecutor may argue the reasonable inferences and conclusions to be drawn from the evidence"). Her statements relating to the boy's credibility were part of her recap of the evidence presented to the jury that supported the boy's allegations against Weltman. *See State v. Carey*, 709 N.W.2d 547, 556 (Iowa 2006) (noting a prosecutor can attempt to boost the credibility of the State's witnesses with evidence-based arguments). Moreover, the prosecutor was free to note the consistency of the boy's reporting of the abuse and to point out that witnesses had no motive to come and testify. *See id.* (finding no misconduct when the prosecutor argued a witness had no motive to lie when the argument was evidence-based); *State v. Waite*, No. 19-1560, 2021 WL 2453373, at *3 (Iowa Ct. App. June 16, 2021) (holding a prosecutor can comment on the consistency of a witness's testimony when the argument is evidence-based). While we find none of the comments relied upon by Weltman were impermissible in context, even if the prosecutor did go too far and crossed the fine line between permissible and impermissible argument, *see State v. Escobedo*, 573 N.W.2d 271, 278 (Iowa Ct. App. 1997) ("[W]e recognize the line between zealous permissible courtroom advocacy and impermissible argument can be very thin."), we do not find

the prosecutor did so recklessly or intentionally as required to establish a prosecutorial-misconduct claim. *See Coleman*, 907 N.W.2d at 139.

As to the prosecutor's references to testimony from the State's expert witness on general facts about grooming and child abuse, Weltman points to nothing that prohibits a prosecutor from referring to that permissible testimony[3] and suggesting that the boy's conduct was consistent with what the expert explained. As the State points out, "While *State v. Dudley*[4] prohibits experts from drawing certain conclusions, it never purported to muzzle prosecutors from making arguments based on admissible, generally-couched expert testimony or other factual evidence in the record." Contrary to Weltman's assertions, the prosecutor's reference to properly admitted expert testimony is not impermissible vouching.

As defense counsel had no duty to object to the prosecutor's closing argument as impermissible vouching or prosecutorial misconduct, counsel was not ineffective for failing to do so.

### C.     Text Messages and Emails

Weltman contends that "defense counsel was ineffective for failing to obtain and introduce texts and emails that would have refuted the State's argument that Weltman designed travel plans to isolate himself with [the boy]." At the core of this claim is the fact the boy's mother provided communication she had with Weltman that she believed to be relevant to law enforcement during their investigation.

---

[3] Weltman challenged the expert's testimony on direct appeal. *Weltman*, 2021 WL 2768910, at *7–8. We determined the testimony was "textbook proper under Iowa law" as "[t]he expert did not tie his general comments to the demeanor of the boy." *Id.* at *8.

[4] 856 N.W.2d 668 (Iowa 2014).

Those communications were later admitted at trial. Weltman argues the evidence presented is a distorted representation of his communication with the mother and incorrectly gives the impression that he went to great lengths to orchestrate situations to be alone with the boy. He contends that if his communications with the mother were reviewed in full, they would put the events of the Israel trip in better context, as it would be apparent that he was ambivalent at best about being alone with the boy and was just trying to be helpful to a friend. And Weltman argues defense counsel should have tried to admit his emails with a hotel and his friend in Israel to show he was just making changes to their travel plans at the mother's behest.

The complete sets of emails and text messages between Weltman and the mother do provide more context—understandably so given their volume.[5] And the communication with Weltman's friend and hotel in Israel do show that he was making changes to the group's travel plans in response to the mother's requests. Nonetheless, defense counsel had a valid strategic reason for not offering these exhibits at trial.

To admit the exhibits at issue, Weltman's defense counsel would need to establish foundation and authenticate the communications. *See* Iowa R. Evid. 5.901(a). To do so likely would have necessitated Weltman's testimony. And defense counsel had a good reason to not encourage Weltman to testify. The State had intended to call Weltman's ex-girlfriend to testify that he told her he had a sexual attraction to young boys and watched foreign films with nude children.

---

[5] These exhibits span hundreds of pages.

However, defense counsel secured a ruling in limine to prohibit that testimony. In that ruling, the district court included a caveat that if Weltman "place[d] his character at issue, the court may reconsider its ruling." So counsel was understandably wary about Weltman testifying in order to get the exhibits admitted but then inadvertently placing his character at issue. That would have opened the door to admission of the damaging testimony from his ex-girlfriend.

Weltman offers some suggestions as to alternative ways that defense counsel might have tried to establish foundation for the exhibits. We question how realistic these suggestions are and consider them to be just the type of "Monday morning quarterbacking" that we are required to avoid. *See Anfinson v. State*, 758 N.W.2d 496, 501 (Iowa 2008) (prohibiting a PCR court from "assum[ing] the role of Monday morning quarterback in condemning counsel's judgment in choosing between what are frequently equally hazardous options" (quoting *State v. Newman*, 326 N.W.2d 788, 795 (Iowa 1982))).

What it boils down to is that counsel had valid concerns about how to admit exhibits like the ones Weltman now advances and reasonably concluded the risk of trying to admit the exhibits by Weltman testifying was too high. That balancing of risk and reward was reasonable trial strategy and emblematic of the difficult choices that defense attorneys often face. Counsel did not breach an essential duty when he employed this trial strategy.

### D. Limiting Instruction

Weltman next contends his counsel was ineffective for not requesting a limiting instruction regarding other bad acts, meaning events that occurred after

the alleged abuse, namely the trip to Israel. The PCR court correctly explained that an instruction on other bad acts or a custom instruction was not necessary,

> The State did not allege that Weltman had committed any other crimes besides the single act of touching [the boy]'s genitals. The other acts that Weltman now complains about were his actions in planning a trip. The other acts themselves were not criminal. Iowa Jury Instruction 200.34 contemplates the State introducing evidence of other crimes that are not the subject of the trial. There was no factual or legal basis to request this instruction. . . .
> . . . .
> There was no allegation or evidence presented that Weltman committed other sex abuse acts with [the boy]. Iowa jury instruction 900.11 did not apply in this case. . . .
> . . . Again, there was no allegation or evidence that Weltman committed other sex acts or other crimes. Even a modified stock instruction would not have applied. There still needs to be a factual and legal basis for the jury instruction.

While defense counsel could have proposed some sort of customized instruction as Weltman now urges, counsel was not required to do so. Counsel did not breach any essential duty by failing to propose a customized instruction in these circumstances.

### E. Motion to Amend Trial Information

At trial, the State moved to amend the trial information to modify the date range of when the abuse occurred after defense counsel moved for judgment of acquittal, citing the fact that the boy did not testify as to a date when the abuse occurred. The amended trial information had a date range from the boy's ninth birthday to the date of the Israel trip, widening the date range by about six months from that alleged in the trial information.[6] Defense counsel did not object to the amendment.

---

[6] The boy testified that the abuse occurred when he was nine years old and happened before they went to Israel.

Weltman argues defense counsel's failure to do so amounted to ineffective assistance. In doing so, Weltman does not challenge the State's ability to move to amend the trial information or the district court's ability to grant the amendment to conform to the evidence. At the time of Weltman's criminal trial, our rules of criminal procedure provided:

> The court may, on motion of the state, either before or during the trial, order the indictment amended so as to correct errors or omissions in matters of form or substance. Amendment is not allowed if substantial rights of the defendant are prejudiced by the amendment, or if a wholly new and different offense is charged.

Iowa Rule of Criminal Procedure 2.4(8)(a) (2020).[7] As the amendment did not charge a "wholly new and different offense," Weltman is limited to arguing that his substantial rights were prejudiced by the amendment. *See id.* He argues "[b]y failing to object, [defense counsel] missed an opportunity to challenge the State's admission of the 'other acts' evidence related to the Israel trip" because the court's ruling on his motion in limine regarding evidence of the Israel trip "was expressly conditioned on the recency of the events to alleged offense conduct."

First, on our review of the district court's ruling on the motion in limine it does not appear the court "expressly conditioned" its ruling "on the recency of the events to the alleged offense conduct" as Weltman claims. Second, even if it did, we agree with the State that the increased date range likely would not impact the court's ruling on admissibility because the possible increased remoteness in time would merely diminish the weight of the evidence rather than affect its admissibility. Weltman's substantial rights were not prejudiced by the amendment to the trial

---

[7] Our rules of criminal procedure have been amended since Weltman's criminal trial in 2020.

information. Counsel breached no duty in failing to object to the requested amendment to the date range in the trial information.

### F. Cumulative Prejudice

Finally, Weltman argues the cumulative prejudice of defense counsel's conduct under all of the above claims warrants relief. *See State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012) ("The court should look at the cumulative effect of the prejudice arising from all the claims [of ineffective assistance of counsel]."). However, if the applicant fails to establish counsel breached a duty with regard to any of the applicant's claims, we do not consider that claim in assessing cumulative prejudice. *See id.* As we have found no breach of duty as to any of Weltman's claims, there is no cumulative prejudice to assess, so we reject his cumulative-prejudice claim.

### IV. Conclusion

The PCR court abused its discretion when it did not admit the email and text-message exhibits. However, because the PCR court ruled in the alternative and addressed those exhibits, it is not necessary to reverse or remand. As to Weltman's ineffective-assistance claims, he cannot establish that counsel breached an essential duty on any claim. As a result, his claims fail.

**AFFIRMED.**